In the Matter of MARY E. CASEY, Respondent, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Appellants.

Second Department, February 7, 1977

*Gerald Harris, County Attorney (Jonathan Lovett* of counsel), for Westchester County Department of Social Services, appellant.

*Louis J. Lefkowitz, Attorney-General (Lawrence D. Dicker* of counsel), for New York State Department of Social Services, appellant.

*Murray B. Schneps* for respondent.

O'CONNOR, J. The petitioner initiated a proceeding pursuant to CPLR article 78 to compel the appellants to consider and determine her eligibility for New York State supplementary income, available under title 6 of article 5 of the Social Services Law. The Special Term granted her request to the extent of directing the appellants to determine petitioner's

application on the record made at the fair hearing. We reverse and dismiss the petition.

The petitioner is a 27-year-old mentally retarded woman. She resided with her parents in Westchester County since the age of two. For at least the last eight years she has attended the Martha Lloyd School, a residential facility for retarded women, which is located in Troy, Pennsylvania. During holidays and vacations she always returns to her parents' home, where she has her own room. She only keeps seasonal clothing at the Pennsylvania school; her parents have testified that they never intended to have petitioner become a permanent resident of the school.

In 1974 petitioner filed an application with the Department of Health, Education and Welfare to receive Federal supplemental security income pursuant to subchapter XVI of the Social Security Act, as well as an additional supplementary payment from the State of Pennsylvania. The Social Security Administration, a bureau of the Department of Health, Education and Welfare, determined that petitioner was a disabled individual entitled to receive these payments. The award of these benefits was predicated upon petitioner's residence in the State of Pennsylvania.

In April, 1975 petitioner applied to the Westchester County Department of Social Services for a New York State supplemental payment, analogous to the Pennsylvania supplemental payment she was already receiving. On June 5, 1975 the application was denied on the ground that petitioner was not a New York State resident attending a certified facility located within New York State. This determination was appealed to the New York State Department of Social Services and a State fair hearing was conducted on September 17, 1975. The State Commissioner affirmed the denial of petitioner's application, but stated as his basis: "The Westchester County Department of Social Services lacks authority to determine whether appellant is entitled to additional state payments from the State of New York." This was so because, pursuant to an agreement entered into between the State of New York and the Secretary of Health, Education and Welfare, under the authority of section 211 of the Social Services Law, only the Secretary had the authority to determine

petitioner's eligibility for supplemental State income payments.

On March 26, 1976 petitioner commenced this article 78 proceeding to annul the commissioner's determination.

### THE CONTENTIONS OF THE PARTIES

Petitioner takes the position that it is New York State which is obligated to determine her eligibility for supplemental State income payments available under title 6 of the Social Services Law. She satisfies the residency and other requirements of title 6. It was arbitrary, capricious and an abuse of discretion to refuse to consider her application for supplemental State benefits.

Appellants contend that they do not have the authority to consider petitioner's application. An agreement between New York State and the Secretary of Health, Education and Welfare vests the sole power to determine eligibility for the State supplemental payments with the Secretary. Petitioner has submitted her application to the wrong party.

### THE OPINION OF THE SPECIAL TERM

The Special Term annulled the determination and directed the appellants to consider and pass upon the petitioner's application. It stated: "Section 212 of the Social Services Law provides that the social services districts shall be responsible for the administration of the states' program of additional state payments and shall accept applications for additional state payments and determine eligibility in accordance with the Social Services Law and the regulations of the Federal Department. Section 212 of the Social Services Law places the responsibility to determine eligibility with the State of New York. There is nothing contained in title 6 which grants authority to determine eligibility to the Federal Department. While subdivision (1) (d) of section 212 does give the Department the right to require the State to re-certify eligibility periodically, the initial determination is to be made by the State."

### THE STATUTORY SCHEME AND THE AGREEMENT OF JULY 12, 1974

### A. SOCIAL SERVICES LAW

"§ 207. Declaration of Purpose. The legislature hereby de-

clares its commitment to meeting the income needs of * * * disabled persons who are receiving basic supplemental security income benefits * * * in order to fully employ available federal aid for the benefit of such persons residing in this state, there is hereby established a state-wide program of additional state payments for * * * disabled persons."

"§ 211. Agreements for federal administration.

"1. The department is hereby authorized, on behalf of the state, to enter into an agreement with the secretary of the federal department of health, education and welfare whereby the secretary agrees to administer the state's program of additional state payments, including determining the eligibility of individuals and couples for such payments.

"2. Any such agreement may authorize the secretary to make additional state payments on behalf of the state to persons found eligible for such payments pursuant to the provisions of this title, in amounts authorized by the provisions of this title, and shall contain conditions of eligibility for such additional state payments, including the requirement of current residence and amounts of earned or unearned income to be disregarded in determining eligibility, in accordance with the provisions of this title, regulations of the department and federal law and regulations."

"§ 212. Responsibility; financing.

"1. Unless there is in effect an agreement for federal administration of additional state payments pursuant to section two hundred eleven of this title, each social services district shall be responsible for providing such payments to persons who are receiving or who would but for their income be eligible to receive, supplemental security income benefits, and who reside or are found in such district, subject to supervision by the state and subject to reimbursement by the state in an amount equal to one-half of such payments made by such district * * *

"2. If there is in effect an agreement for the federal administration of additional state payments, the state shall be responsible for paying to the secretary an amount equal to: (a) the amount expended under the state's programs of old age assistance, assistance to the blind and aid to the disabled during the calendar year, nineteen hundred seventy-two, less any federal funds properly received on account of such ex-

penditures; plus (b) any amounts in addition to such sums as may be required by the agreement."

## B. U.S. CODE, TIT. 42

"§ 1382e. Supplementary assistance by state or subdivision to needy individuals—Exclusion of cash payments in determination of income of individuals for purposes of eligibility for benefits; agreement by Secretary and State for Secretary to make supplementary payments on behalf of State or subdivision

"9 (a) Any cash payments which are made by a State (or political subdivision thereof) on a regular basis to individuals who are receiving benefits under this subchapter or who would but for their income be eligible to receive benefits under this subchapter, as assistance based on need in supplementation of such benefits (as determined by the Secretary), shall be excluded under section 1382a (b) (6) of this title in determining the income of such individuals for purposes of this subchapter and the Secretary and such State may enter into an agreement which satisfies subsection (b) of this section under which the Secretary will, on behalf of such State (or subdivision) make such supplementary payments to all such individuals.

### "AGREEMENT BETWEEN SECRETARY AND STATE; CONTENTS

"(b) Any agreement between the Secretary and a State entered into under subsection (a) of this section shall provide—

"(1) that such payments will be made * * * to all individuals residing in such State (or subdivision) who are receiving benefits under this subchapter, and

"(2) such other rules with respect to eligibility for or amount of the supplementary payments, and such procedural or other general administrative provisions, as the Secretary finds necessary * * * to achieve efficient and effective administration of both the program which he conducts under this subchapter and the optional State supplementation."

### THE JULY 12, 1974 AGREEMENT

Pursuant to the authority contained in section 211 of the Social Services Law and section 1382e of title 42 of the United States Code, the State of New York and the Secretary of

Health, Education and Welfare entered into an agreement to govern their respective roles in distributing supplemental income benefits. The pertinent provisions of the agreement are set out below:

## "ARTICLE II

### FUNCTIONS TO BE PERFORMED BY THE SECRETARY

"The Secretary shall:

"A. Make determinations of eligibility for supplementary payments with respect to individuals residing in the State who are or will be receiving (or would but for their income be eligible to receive) basic Federal payments, and make determinations of eligibility for mandatory minimum supplements pursuant to the terms of this agreement with respect to any individual certified by the State to the Secretary pursuant to article III.

"B. Make such supplementary payments or mandatory minimum supplements (whichever are higher) to individuals determined to be eligible to receive such payments in such amounts and at such times as prescribed by the terms of this agreement.

\*     \*     \*

"E. Provide individuals reasonable notice and opportunity for a hearing with respect to any adverse decisions as to the rights of such individuals to receive such supplementary payments, or mandatory minimum supplements, or the amount of those payments."

\*     \*     \*

## "ARTICLE VIII

### ADMINISTRATIVE COSTS

"A. It is the general intent of this agreement that the Secretary, in performing his functions and duties under this agreement, shall (subject to article II of appendix A) be paid only an amount equal to the amount of the supplementary payments and mandatory minimum supplements made on behalf of the State. The cost of administration incurred by the Secretary in carrying out his functions under this agreement shall constitute cost to the Secretary, subject to the application of article II-G hereof.

"B. Administrative expenses incurred by the State in the performance of work called for by this agreement or requested by the Secretary shall be reimbursed by the Secretary not less frequently than quarterly, on the basis of the cost principles set forth in subpart 1-15.7 of part 1-15 of the Federal Procurement Regulations (41 CFR 1-15.7) in effect as of the date of this agreement."

DISCUSSION

The judgment of the Special Term must be reversed as a matter of law, and the determination of the New York State Department of Social Services confirmed. Even assuming that petitioner is a New York State resident otherwise eligible to receive supplemental State benefits, she could not receive those benefits by way of an application to the State or County Department of Social Services. Special Term's judgment is contrary to the clear and unambiguous language of section 211 of the Social Services Law and article II of the July 12, 1974 agreement. If this judgment is allowed to stand it will serve to discourage rather than encourage participation in the supplemental security income program by New York State.

Section 211 of the Social Services Law gives "the department" the authority to enter into an agreement with the Secretary of Health, Education and Welfare "to administer the state's program of additional state payments, *including determining the eligibility * * * for such payments.*" (Emphasis supplied.) Acting under this clear statement of authority, such an agreement was entered into whereby it was agreed "The Secretary shall: A. Make determinations of eligibility for supplementary payments with respect to individuals residing in the State". This mandatory language unequivocally grants to the Secretary, not the State, the power to determine questions of eligibility for supplemental State payments. The State Commissioner, lacking the authority to determine the question of eligibility raised by petitioner's application, correctly refused to consider the application. It is significant to note that both petitioner and Special Term failed even to address themselves to section 211 of the Social Services Law and article II of the July 12, 1974 agreement. Ignoring these provisions will not make them disappear. The failure even to discuss these provisions is an indication of the clarity of the language authorizing the State to allow the Secretary to determine questions of eligibility.

The Special Term's reliance on section 212 of the Social Services Law is misplaced. The assertion that section 212 "places the responsibility to determine eligibility with the State of New York" can only be made if one ignores the language contained in the very first sentence of that section:

"Unless there is in effect an agreement for federal administration of additional state payments pursuant to section two hundred eleven of this title". The reliance of petitioner upon article III of the July 12, 1974 agreement is also erroneous. Article III requires the State to determine the eligibility only of an individual "who makes application prior to January 1, 1974". It is undisputed that the present application was submitted subsequent to that date.

New York State is not neglecting its residents. Rather, New York residents are being helped because funds which would be spent in the administration of the supplemental income benefits program are now available to serve their other needs. The declaration of purpose of title 6 (§ 207) lists as one of its goals the desire "to fully employ available federal aid". One of the inducements for a State to maintain an assistance program to supplement Federal benefits is the willingness of the Federal Government to assume the burden of the administrative costs of such a program (see US Code, Cong & Admin News, 1972, vol 3, p 4992; US Code, Cong & Admin News, 1973, vol 2, p 3182). One of the primary objectives of Congress in providing for optional Federal administration was to relieve "the States of very substantial administrative costs" (US Code, Cong & Admin News, 1973, vol 2, p 3183). The New York Legislature determined that there would be a very sizable adminstrative saving after the adoption of title 6 (see McKinney's 1974 Session Laws of New York, p 2055). It is for these reasons that article VIII of the July 12, 1974 agreement provides: "The costs of administration incurred by the Secretary in carrying out his functions under this agreement shall constitute cost to the Secretary".

We do not contend that it was improper for petitioner to assert that she was a New York resident despite her earlier assertion of a Pennsylvania residency. We are merely holding that her application for New York State supplemental benefits should have been filed with the proper authorities. If she is aggrieved by a determination of the Secretary of Health, Education and Welfare, adequate Federal administrative review procedures are available to her.

### CONCLUSION

The judgment under review should be reversed, without costs and the determination of the State Commissioner confirmed, and the petition should be dismissed. The determination under review properly sets forth the remedies currently available to the petitioner.

COHALAN, Acting P. J., RABIN and SHAPIRO, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered July 29, 1976, reversed, on the law, without costs or disbursements, petition dismissed, and determination of the Commissioner of the New York State Department of Social Services, dated November 26, 1975, confirmed.