**David A. FRERKS, by his Guardian and Father, August FRERKS, SS#: 090–64–8596, Plaintiff,**

**v.**

**Donna SHALALA, Secretary of the Department of Health & Human Services, and Gregory Kaladjian, Commissioner of the New York State Department of Social Services, Defendants.**

**No. CV 91–1928.**

United States District Court, E.D. New York.

March 28, 1994.

Robert, Lerner & Bigler, Rockville Centre, NY, for plaintiff; Charles Robert, of counsel.

Zachary W. Carter, U.S. Atty. E.D.N.Y., Brooklyn, NY, for defendant Donna Shalala; Elliot M. Schachner, Asst. U.S. Atty., of counsel.

G. Oliver Koppell, Atty. Gen., Mineola, NY, for defendant Gregory Kaladjian; Michele M. Woodard, Deputy Atty. Gen., of counsel.

### OPINION AND ORDER

SPATT, District Judge:

The plaintiff, David Frerks ("Frerks"), is a mentally handicapped twenty-four year old whose parents have been appointed as his guardians by the Nassau County Surrogate's Court. In 1988 and 1990 respectively, Frerks was denied eligibility for Supplemental Security Income ("SSI") by the United States Secretary of Health and Human Services ("Secretary"), and Medicaid by the New York State Commissioner of Social Services ("Commissioner"). The ground for the eligibility denials was that a medical malpractice settlement received by the plaintiff and held in a guardianship account ordered by the Surrogate's Court was determined by the agencies to be a "resource" available to the plaintiff. By counting the value of the settlement as a resource available to him, the plaintiff exceeded the resource limit for eligibility in these programs set by federal and state statutes. Accordingly, he was disqualified from receiving benefits.

As a result of these eligibility denials, the plaintiff initiated this action for judicial review of the Secretary's actions pursuant to 42 U.S.C. § 405(g). The plaintiff also seeks relief against the Commissioner, based on the allegation that the New York State Department of Social Services ("NYDSS") failed to follow federal and state laws when it denied the plaintiff Medicaid eligibility and additional state funds that supplement SSI payments.

The Secretary and Commissioner move to dismiss the Complaint. The defendant Secretary moves pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings, on the ground that the Secretary's decision to deny the plaintiff SSI is supported by substantial evidence in the record. The defendant Commissioner moves to dismiss the complaint against him pursuant to Fed.R.Civ.P. 12(b), on the grounds of lack of subject matter jurisdiction, failure to state a claim, and failure to join a necessary party to the action, or in the alternative, for summary judgment.

### STATUTORY AND REGULATORY FRAMEWORK

The federal Supplemental Security Income program, 42 U.S.C. § 1381 *et seq.*, provides non-medical cash assistance to aged, blind or disabled persons. Under the statute, an aged, blind or disabled person is eligible for SSI if either their monthly income or overall available resources do not exceed certain

344

maximum amounts set forth in the statute and regulations. *See* 42 U.S.C. § 1382, and 20 C.F.R. § 416 subparts D and K (setting forth criteria for income limits) and 20 C.F.R. § 416.1205 (resource limits). In 1988, the year Frerks was denied eligibility, the maximum amount of resources a disabled individual not residing with a spouse could have available was $1,900. *See* 42 U.S.C. § 1382(a)(1)(B)(ii), and 20 C.F.R. § 416.1205. If the Department of Health and Human Services ("HHS") determines that either of an individual's available resources or monthly income exceed the prescribed limits, he or she is ineligible for SSI.

The statute does not define the terms "income" or "resource." Instead, the definition of these terms is provided in the regulations promulgated under the statute. With respect to the definition of a "resource," 42 C.F.R. § 410.1201 discusses resources generally, and gives the following definition:

(a) *Resources; defined.* [R]esources means cash or other liquid assets ... that an individual ... owns and could convert to cash to be used for his or her support and maintenance.

(1) If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource.

The regulation goes on to specifically define liquid and nonliquid resources that an individual owns or could convert to cash in order to use for his or her support and maintenance:

(b) *Liquid Resources.* Liquid resources are cash or other property which can be converted to cash within 20 days.... Examples of resources that are ordinarily liquid are stocks, bonds, mutual funds shares, promissory notes, mortgages, life insurance policies, bank accounts (savings and checking), certificates of deposit and similar items.

(c) *Nonliquid Resources.* (1) Nonliquid resources are property which is not converted to cash within 20 days.... Examples of resources that are ordinarily nonliquid are loan agreements, household

goods, automobiles, trucks, tractors, boats, machinery, livestock, building and land.

42 C.F.R. § 410.1201(b) and (c).

The NYDSS provides Optional State Supplement ("OSS") payments to SSI recipients as well. Through OSS, also known as "supplemental assistance" and "additional state payments," a state provides additional aid to SSI recipients and to those who do not meet the eligibility standards for SSI. *See* 42 U.S.C. § 1382e, and New York State Social Services Law § 207 *et seq.* Although OSS assistance comes almost exclusively from state funds, the federal statute provides that, at a state's request, the federal government will administer the OSS assistance. *See generally Oklahoma v. Schweiker,* 655 F.2d 401, 404 (D.C.Cir.1981).

New York State has entered into an agreement with the HHS, whereby HHS administers the OSS payments and determines the eligibility of individuals for such payments. *See* New York State Social Services Law § 211(1); *Casey v. New York State Department of Social Services,* 56 A.D.2d 72, 391 N.Y.S.2d 173, 176 (2d Dept.1977).

In addition to SSI, the federal Medicaid program, 42 U.S.C. § 1396 *et seq.,* provides medical assistance to those who lack sufficient income and resources to pay for health care. Medicaid is also a joint federal-state program. In order for a state to participate in the Medicaid program, it must create a state plan that complies with the requirements of the federal statute and regulations. *See Himes v. Sullivan,* 779 F.Supp. 258, 259 (W.D.N.Y.1991), *aff'd without opinion* 956 F.2d 1159 (2d Cir.1992).

New York State's Medicaid program is entitled the Medical Assistance Program, and is set forth in New York State Social Services Law § 366 *et seq.,* and at 18 New York Code Rules and Regulations ("NYCRR") part 360. Similar to SSI, an applicant whose income or resources are in excess of the standards prescribed in the regulations will be ineligible for Medical Assistance. Specifically with respect to resources, an applicant whose net available resources are in excess of the resource standards will be ineligible for Medical Assistance until they incur medical expenses equal to or greater than the

excess resources. 18 NYCRR 360–4.1 and 360–4.8(b). In 1990, the resource limit standard for Medical Assistance eligibility was $3,350 for a single individual.

## PROCEDURAL BACKGROUND

### 1. Background With Respect to Secretary's Denial of SSI Benefits.

According to the pleadings, which include the Administrative Transcript of the SSI benefits eligibility determination, the following chronology summarizes the events that transpired with respect to the Secretary's denial of the plaintiff's SSI eligibility.

The plaintiff's parents applied for SSI benefits on their son's behalf on June 1, 1988. On June 29, 1988 the plaintiff was approved for SSI benefits, and began receiving SSI and Medicaid benefits.

Surrogate Raymond Radigan of the Nassau County Surrogate's Court appointed the plaintiff's parents as his co-guardians on June 8, 1988. The order appointing them as guardians stated that they could not collect or dispose of their son's property "without further order" of the Surrogate's Court.

On September 15, 1988 Frerks received a settlement in a medical malpractice case, and received $333,333 net of the contingent attorney's fee. Pursuant to the Compromise Order approving the settlement dated September 15, 1988 and filed in Nassau County Supreme Court, no withdrawals could be made from the settlement amount without further order of the Surrogate's Court. Frerks's parents notified the HHS and NYDSS of the tort settlement on October 3, 1988.

Frerks's settlement amount was placed into four court-approved bank accounts ("guardianship accounts"). A letter explaining the policy with respect to withdrawals from these accounts was sent to HHS by the Surrogate's Court in April, 1990. The letter stated in part:

The guardian must apply to the court for an order to withdraw funds. All funds are held in joint control and cannot be withdrawn without a court order. The court will only release funds held in guardianship accounts that the court deems neces-

sary for the support, education and medical needs of the respondent.

Frerks's parents were allowed a $700 disbursement per month from one of the guardianship accounts to pay for the support and education of their son.

On March 16, 1990 HHS notified the plaintiff that his SSI benefits were being terminated because of excess resources as of October 1988, and HHS would seek retroactive recovery of benefit payments made since October 1988. Frerks's parents appealed for a reconsideration of the decision to the local Social Security office on March 29, 1990. The ground for the appeal was that Frerks's parents did not have access to the guardianship accounts, as all withdrawals had to be court approved.

On reconsideration, the local Social Security office affirmed the decision to terminate the benefits, stating that the bank accounts could be accessed, and thus were considered a resource available to the plaintiff.

On May 6, 1990, Frerks's parents appealed the reconsideration determination, and requested a hearing before an administrative law judge ("ALJ"). ALJ L. Charles Leonard affirmed the termination of Frerks's SSI benefits on August 23, 1990. In his decision, the ALJ stated:

The record shows that the settlement funds ... cannot be withdrawn without a court order. While the court does not always approve every request for withdrawal, it will release funds held in guardianship accounts that it deems necessary for the support, education and medical needs of [Frerks's].

Under the foregoing facts, I am constrained to find that the settlement funds were available to the claimant for his support and maintenance[.]

The ALJ decided, however, that retroactive recovery by HHS of benefit payments paid to Frerks was not warranted.

The ALJ's decision was appealed to the Secretary's Appeals Council on September 13, 1990. On March 27, 1991 the Appeals Council affirmed the decision of the ALJ, holding that the evidentiary record supported the ALJ's decision that the guardian-

ship accounts were resources available to the plaintiff.

## 2. Background With Respect to Commissioner's Denial of Medicaid Benefits.

On October 25, 1990, the Nassau County Department of Social Services ("NCDSS") discontinued Medicaid payments to the plaintiff. The reason for the discontinuance was that the plaintiff's non-exempt resources exceeded the medical exemption allowance prescribed for a family of one under the state Medical Assistance program. A fair hearing was held on November 8, 1991 before the Commissioner's designee with respect to the NCDSS's denial of Medicaid benefits to Frerks.

The Commissioner's designee affirmed the decision denying eligibility on December 20, 1991. The designee found that the plaintiff's non-exempt resources exceeded the $3,350 Medical Assistance resource exemption for a household of one, because the funds from Frerks's medical malpractice settlement were available to Frerks, albeit upon application to the Surrogate's Court.

While an appeal of the fair hearing decision to the Commissioner was pending, the plaintiff also petitioned the Surrogate's Court for leave to transfer the assets in the guardianship accounts to a Supplement Needs Trust Fund ("SNT"), thereby making the funds unavailable for purposes of Medicaid eligibility. Surrogate Radigan denied the petition on August 7, 1992, on the ground that such a trust would contravene the spirit and intent of the Medicaid laws by shielding resources that are above the eligibility limits. *See In the Matter of Frerks*, No. 254649 (Surrogate's Ct. Nassau Cty, Aug. 7, 1992). The Surrogate also denied the plaintiff's motion for a rehearing.

## 3. The Plaintiff's Complaint.

After the final decision by the Secretary, and during the pendency of his appeal to the Commissioner regarding the denial of Medicaid benefits by the NCDSS, the plaintiff initiated this action on May 29, 1991 pursuant to the judicial review provisions of the Social Security Act, 42 U.S.C. § 405(g). That sec-

tion allows for federal court review of a final action taken by the Secretary.

Except for two paragraphs directed at the then Commissioner Cesar Perales, all of the allegations in the Complaint are directed at the Secretary's actions. With respect to the Commissioner, the Complaint alleges the following:

19. On October 25, 1990, defendant PERALES denied Medical Assistance to plaintiff because defendant PERALES concluded that the tort assets were an "available resource."

. . . .

26. Defendant PERALES has a policy and practice of ignoring State Court orders by delegating the administration of Optional State Supplement funds to the Secretary and thereby abdicating his State Constitutional duty to comply with both State and Federal Court decisions.

The gravamen of the Complaint is that the Secretary and Commissioner erred in deciding that the guardianship accounts were an available resource to the plaintiff for purposes of SSI and Medicaid eligibility. Instead, the plaintiff contends that the Surrogate's Order restricts the use of the guardianship account funds so that those funds are not available to the plaintiff. Moreover, the plaintiff alleges that the defendants should have followed the rule espoused in *Navarro by Navarro v. Sullivan*, 751 F.Supp. 349 (E.D.N.Y.1990). In *Navarro*, the court held that a tort settlement, which could not be used for medical costs or maintenance needs for which public funds were available, did not constitute a "resource" available to a mentally handicapped plaintiff for purposes of SSI eligibility.

The plaintiff requests that the Secretary's and Commissioner's determinations of ineligibility be vacated. The plaintiff also seeks retroactive payment of benefits from the time of plaintiff's initial application for SSI and Medicaid benefits. Furthermore, the plaintiff requests that the Court order the defendants to acquiesce to (i) the Surrogate's Order with respect to the non-availability of the plaintiff's guardianship accounts, and (ii) the holding of *Navarro*. Finally, the plaintiff

requests that the Court order the Secretary to rescind an HHS interpretive guideline regarding how local Social Security officials are to determine whether a certain asset is a "resource."

## MOTIONS BEFORE THE COURT

There are two motions before the Court. In the first, the Secretary moves for a judgment on the pleadings affirming the Secretary's decision, pursuant to Rule 12(c). In the second motion, the Commissioner moves to dismiss the Complaint (i) pursuant to Rule 12(b)(1) on the ground of lack of subject matter jurisdiction, (ii) pursuant to Rule 12(b)(6) for failure to state a claim, and (iii) pursuant to Rule 12(b)(7) and Rule 19(a) for failure to name the NCDSS as a party in this action. In the alternative, the Commissioner moves for summary judgment in his favor pursuant to Rule 56.

The Secretary contends that this Court is limited to inquiring whether the Secretary's determination is supported by substantial evidence in the record. According to the Secretary, the decision to deny SSI eligibility to Frerks should be affirmed, because the ALJ applied the proper legal standard in determining that the guardianship accounts were a resource available to the plaintiff, and there was substantial evidence in the record to support the determination.

The Secretary also contends that the ALJ's decision is supported by the HHS's interpretive guidelines to local Social Security officials for use in determining whether a particular asset is a "resource", which are set forth in the July, 1990 Social Security *Program Operation Manual System* ("POMS").

Finally, the Secretary argues that *Navarro* is inapposite to the facts of this case, because the provisions of the tort settlement order in that case proscribed the use of the settlement funds for the support and maintenance of the plaintiff.

Alternatively, the Secretary argues that her decision must be affirmed because the plaintiff is ineligible for SSI on the grounds that his "income" exceeds the statutory maximum of $386 a month.

The Commissioner contends that it is not apparent from the Complaint exactly what action by the Commissioner the plaintiff is challenging in this case. With respect to the allegation concerning the denial of Medicaid benefits, the Commissioner contends that the plaintiff initiated this action without exhausting his state judicial remedies pursuant to Article 78 of the New York CPLR. As a result, the Commissioner alleges that the plaintiff is precluded from bringing this action in the federal court.

Second, with respect to the allegation that the Commissioner has abdicated his duty to administer the Optional State Supplemental funds program in accordance with the federal regulations, the Commissioner contends that the plaintiff has failed to state a claim against him. Pursuant to section 211(1) Of the State Social Service Law, the Commissioner has, by agreement, delegated all questions of SSI eligibility to the HHS.

Third, the Commissioner argues that the Complaint should be dismissed because the NCDSS has not been named as a party defendant. According to the Commissioner, the NCDSS is a necessary party and complete relief cannot be given in this case unless it is joined pursuant to Rule 19(a).

## DISCUSSION

The Court will separately discuss the issues raised in this case with respect to each of the defendants, after stating the standard of review applicable to a motion for judgment on the pleadings and for summary judgment.

### Judgment on the Pleadings

Judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). In considering a motion for judgment on the pleadings, the court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences therefrom in favor of the non-movant. *DeSantis v. United States*, 783 F.Supp. 165, 168 (S.D.N.Y.1992). Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief, the court can not grant a defendant's motion for judg-

ment on the pleadings. *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977).

■ In its discretion and upon notice to the parties, a court may consider materials outside the pleadings. If it does so, the motion for judgment on the pleadings is treated as one for summary judgment. *Sellers*, 842 F.2d at 642.

In considering the Secretary's motion, the Court has considered the Complaint, Answer and Administrative Transcript, and has not looked beyond the pleadings.

*Summary Judgment Standard*

■ A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c).

■ Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991).

In the Court's view, there are no genuine issues of material fact in dispute. Rather, the parties' dispute concerns whether the Secretary and Commissioner applied the correct legal standard set forth in the applicable federal statute and regulations, when they determined that the plaintiff was not eligible for SSI and Medicaid benefits because his tort settlement funds were a "resource" available to him for support and maintenance.

*A. Claims Against The Secretary.*

**1. The Secretary's Decision is Supported by Substantial Evidence.**

■ The Court may set aside the Secretary's determination only if it is based upon legal error, or is not supported by substantial evidence in the record as a whole. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence is defined as what a reasonable mind might accept as adequate to support a conclusion. Such evidence is more than a scintilla, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ Moreover, as long as the Secretary's view is supported by substantial evidence, this Court cannot substitute its judgment for that of the Secretary's. *Parker v. Harris*, 626 F.2d 225, 232 (2d Cir.1980).

■ In determining that the plaintiff's trust fund was a "resource" available to the plaintiff, the ALJ decided that the funds, while "blocked," were still available to the plaintiff:

> The record shows that the settlement funds ... cannot be withdrawn without a court order. While the court does not always approve every request for withdrawal, it will release funds held in guardianship accounts that it deems necessary for the support, education and medical needs of [Frerk's].
>
> Under the foregoing facts, I am constrained to find that the settlement funds were available to the claimant for his support and maintenance[.]

In this Court's view, the ALJ's determination is supported by substantial evidence in the record as a whole. For example, the Surrogate has allowed disbursements of $700 per month from one of the accounts to be applied towards Frerks' support and education, and has ordered disbursements from the accounts to reimburse Frerks's parents for previously incurred support and maintenance expenditures.

The plaintiff cites one instance where the Surrogate denied the use of funds from the guardianship accounts to the guardians, to support his contention that these accounts are not available "resources." The plaintiff's example of this denial, however, does not support his contentions. On March 12, 1990 the Surrogate denied an application by the plaintiff to permit disbursement from the accounts in order to pay attorney's, accounting and guardianship fees. Such expenditures are not support and maintenance costs.

■ Furthermore, the ALJ's determination is not based on the application of an erroneous legal standard. The regulations define a "resource" in relevant part as an asset that can be converted or liquidated into cash to be used for support and maintenance. *See* 20 C.F.R. § 416.1201. "Liquid Resources" are further defined as property which can be converted to cash within twenty days. Some of the examples of resources given by the regulation are life insurance policies, bank accounts (savings and checking), certificates of deposit and similar items. *See* 20 C.F.R. § 416.1201(b).

■ The underlying purpose behind the statutory and regulatory scheme is to ensure that, when determining an individual's SSI eligibility, any assets and other funds readily available to that person for support and maintenance should be applied towards those purposes before the state must intervene to provide minimal financial support to that person. *See e.g., Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981) (the purpose of SSI is to assure recipient's income is maintained at the minimum level necessary for the recipient to subsist); *Singer v. Secretary of Health and Human Services*, 566 F.Supp. 204 (S.D.N.Y. 1983) (the purpose of SSI is not to provide financial security to recipient but income that

is actually needed, and the resource limitation bears a rational relationship to that purpose); H.R.Rep. No. 231, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5132–5133 (purposes of providing SSI assistance is to complement other sources of income where other sources fail to keep individual from falling below poverty line).

Contrary to the plaintiff's contentions, the Secretary's decision applied the correct legal standard embodied in the statute and regulation. As stated by the ALJ, the primary issue before the Secretary was "whether the claimant has excess resources" that rendered him ineligible for SSI. After reviewing the regulations defining a resource and the examples given therein, the ALJ considered whether the guardianship accounts met the regulatory definition of resource. Based on the record before the ALJ, he applied the facts to the law and concluded that the accounts could be converted and made available to the plaintiff for his support and maintenance. In the view of this Court, the ALJ applied the correct methodology and legal standard in arriving at his decision. *See State of New York ex rel. Holland v. Sullivan*, 927 F.2d 57, 59 (2d Cir.1991) ("When a rule sets forth specific criteria ... the Secretary's determination must contain an application of the criteria to the particular facts of the case.").

Moreover, the ALJ's determination is consistent with the interpretation given to the term "resource" by HHS in its interpretative guidelines to local Social Security offices. In conformance with the regulations and the purposes they serve, the Secretary has further construed the meaning of "resource," by issuing interpretive guidelines in the POMS. The POMS section at issue here provides that:

> [F]unds in a conservatorship account are considered available if state law permits such funds to be used for an individual's support and maintenance....

> If State law specifically requires that funds be made available for the care and maintenance of an individual, e.g., "blocked accounts", assume, absent evidence to the contrary, that they are that individuals

resource. This is true despite the fact that the individual or his/her agent is required to petition the court to withdraw funds for the individual's care.

POMS at SSI 01120.010.

 Although the POMS is not published in the Federal Register, and does not have the force of law, it is entitled to persuasive authority. *St. Mary's Hospital v. Blue Cross & Blue Shield,* ·788 F.2d 888, 890 (2d Cir. 1986) (discussing the pre-POMS manual); *Davis v. Secretary of Health and Human Services,* 867 F.2d 336, 340 (6th Cir.1989); *Ruppert v. Secretary of Health and Human Services,* 671 F.Supp. 151, 158 n. 3 (E.D.N.Y. 1987), *aff'd in part and reversed in part,* 871 F.2d 1172 (2d Cir.1989).

### 2. The Plaintiff's Contentions in Opposition to the Secretary's Decision Are Unavailing.

The plaintiff raises several arguments to support his contention that the ALJ applied an erroneous legal standard in making the determination that the guardianship accounts were a "resource" available to the plaintiff. Each of these arguments is without merit.

The plaintiff first contends that the ALJ "deemed" the guardianship accounts to be a liquid resource in contravention of the regulations—which only allow "deeming" resources for married individuals or children. This argument, however, misconstrues the use of the word "deemed" by the ALJ.

In the context of discussing the Surrogate's Court's ability to release funds to the plaintiff, the ALJ stated that "[w]hile the court does not always approve every request for withdrawal, it will release funds held in guardianship accounts that it deems necessary for the support, education and medical needs of [Frerks's]." The "it" refers to the Surrogate's Court. That court's "deeming" of what is necessary for the plaintiff's support and maintenance—e.g., whether a particular treatment is medically necessary and requires the release of funds—is not the same as "deeming" certain resources of a married individual or child as "resources" for the purposes of 20 C.F.R. § 416.1202—e.g.,

whether a joint account or joint tenancy is a "resource."

Contrary to the plaintiff's contention, the ALJ did not "deem" anything in his decision. Rather, ALJ Leonard followed the legal standard in the regulations to determine whether the guardianship accounts were available to the plaintiff. In this Court's view, the ALJ's conclusion that funds from such accounts were available was based on substantial evidence in the record, and was not erroneous as a matter of law.

 The plaintiff's next argument is that, rather than applying the standard found in the federal regulations in arriving at the decision that the guardianship accounts were available to Frerks, the Secretary applied the July, 1990 SS POMS "blocked account" presumption. In doing so, the plaintiff alleges that the Secretary violated the Administrative Procedure Act, because she based her decision on an interpretive guideline that was not promulgated as a rule by notice and comment. *See Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

The Court finds this argument unconvincing. The ALJ's decision was based on applying the regulatory standard embodied in 20 C.F.R. § 416.1201 to the facts of this case. As described above, ALJ Leonard considered whether the guardianship accounts were available to the plaintiff for support and maintenance, and decided they were available based on the Surrogate's Order, not on the analysis set forth in the POMS. Indeed, the plaintiff admits that the ALJ and Appeal's Council did not even cite the POMS standard in their decisions. Moreover, the POMS is entitled to persuasive authority, and in this Court's view lends support to the defendants' contention that the Secretary's decision was correct.

The plaintiff's third argument is that the Secretary should have followed the standard enunciated in *Navarro, supra,* for determining whether a tort settlement is a "resource" for purposes of SSI eligibility. This argument is also unpersuasive. *Navarro* is inapposite to the facts of this case.

The *Navarro* court held that the monies from a medical malpractice settlement maintained in an account for a disabled child did not constitute a "resource" available to the plaintiff pursuant to 20 C.F.R. § 416.1201, because the specific language of the settlement order precluded the availability of the funds for the plaintiff's support and maintenance. The relevant language in that case read as follows:

> [The funds awarded the plaintiff] shall be available only for limited use which … specifically shall not include the cost of home or residence upkeep, medical costs or maintenance needs for which public funds are available … but said funds may be [used] subject to special Court approval, for such personal items [for plaintiff] as a purchase or capital investment in or lease of a physical facility for mentally handicapped adults; non-medical transportation; and personal non-public funded items such as clothing, T.V. computer, or a vacation, or such similar non-covered items.

*Navarro*, 751 F.Supp. at 350.

Unlike the language of the settlement order in *Navarro*, the Surrogate's Order in this case allows the guardianship accounts to be available to the plaintiff solely for his support and maintenance. According to the Surrogate's April, 1990 letter explaining the policy in regard to withdrawals from these accounts, "[t]he court will only release funds held in guardianship accounts that the court deems necessary for the support, education and medical needs of the respondent." Indeed, whereas the settlement order in *Navarro* stated that the funds were to be used for items that can not be "fairly denominated [as] support and maintenance," *id.* at 350, the guardianship accounts in this case are limited to uses that can only be denominated as support and maintenance. Accordingly, *Navarro* is distinguishable from the facts of the present case and does not support the plaintiff's contentions.

█ Finally, the plaintiff contends that the Secretary's decision should be vacated because the defendants had an affirmative statutory duty to advise the plaintiff's guardians that they could transfer the tort settlement to a Special Needs Trust ("SNT"), and

thereby meet the eligibility requirements for SSI. The Court rejects this argument because it is not grounded on any statutory basis.

The words of the statute alleged by the plaintiff as expressing such a duty state:

> [T]he Secretary shall prescribe the period of time within which … various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits.

42 U.S.C. § 1382b(b)(1). The language of section 1382b(b) does not mention anything about notice by the Secretary to SSI recipients regarding the transfer of assets to a SNT. The legislative history of this section also does not evince a purpose or intent by Congress to enact an affirmative duty on the Secretary's part with respect to notifying SSI recipients of the ability to transfer their assets to a SNT. *See* H.R. 231, 92nd Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.A.A.N. 4989, 5322. Finally, neither the regulations promulgated under section 1382b(b), *see* 20 C.F.R. § 416.1240, nor any of the other regulations cited by the plaintiff, *see e.g.*, 20 C.F.R. § 416.1336, § 416.1246, mention any such affirmative duty on behalf of the Secretary.

█ The Court must apply the plain language of the statute, unless the language is at odds with its legislative purpose. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); *Samuels, Kramer & Co. v. Commissioner of Internal Revenue*, 930 F.2d 975, 979 (2d Cir.1991), *cert. denied*, ─── U.S. ───, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991). Since the language of the statute is clear, and there is no legislative purpose to the contrary, the Court finds that, as a matter of law, the defendants were not required to notify Frerks's parents under the statute or regulations as to the transfer of the assets to a SNT.

The Secretary's decision in this matter to deny SSI eligibility to the plaintiff on the grounds that the guardianship accounts are a resource available to the plaintiff, was arrived at by a proper application of the legal standard embodied in 42 U.S.C. § 1382 and

20 C.F.R. § 416.1201. Moreover, the Secretary's decision is supported by substantial evidence in the record. Accordingly, the Court affirms that decision, and grants the Secretary's motion for a judgment on the pleadings in her favor. The Court need not reach the issue of whether the Secretary's decision should also be affirmed on the alternative grounds that the plaintiff has exceeded the income limits specified in the statute and regulations.

### B. *Claims Against The Commissioner.*

The Court reiterates that with respect to the Commissioner, the Complaint alleges two claims. The first is a challenge to the Commissioner's October 25, 1990 ruling denying Medicaid to the plaintiff, on the grounds that the settlement monies were an available resource. The second claim is the allegation that the Commissioner has unlawfully delegated his duty to administer the OSS program to the Secretary, and abdicated his duty to comply with both state and federal court decisions.

■ The defendant raises the argument that Frerks is precluded from bringing his suit in this Court because he has not exhausted judicial or administrative remedies. The Court disagrees with the defendant Commissioner that the doctrine of exhaustion of administrative remedies is applicable in this case.

The plaintiff raises issues involving the Commissioner's compliance with federal statutory and regulatory SSI and Medicaid guidelines. In this Court's view, the claims asserted—improper delegation, abdication of federal statutory duties, and failure to follow federal guidelines—do not involve the kinds of issues that can be remedied by the agency's administrative appeals process. *Compare Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 592–93 (2d Cir. 1993) (ERISA claimants cannot bring suit in federal court until they have exhausted their administrative appeals before the ERISA plan administrators) and *Wrenn v. Secretary, Department of Veterans Affairs,* 918 F.2d 1073, 1078 (2d Cir.1990) (ADEA suit against Veterans Administration must first exhaust administrative remedies offered by that agency).

The cases cited by the Commissioner in support of his contention that the Court does not have jurisdiction until the plaintiff exhausts his administrative remedies are inapposite. *Alfara Motors Inc. v. Ward,* 814 F.2d 883 (2d Cir.1987), *Oberlander v. Perales,* 740 F.2d 116 (2d Cir.1984) and *Giglio v. Dunn,* 732 F.2d 1133 (2d Cir.1984) deal with judicial and administrative remedies to arbitrary agency action in the context of the state providing an adequate pre or · post-deprivation hearing for due process purposes in section 1983 cases. The plaintiff in this case has raised different claims. Accordingly, the plaintiff need not pursue an Article 78 proceeding or exhaust any administrative remedies before bringing his claims against the Commissioner to this Court.

■ With respect to the plaintiff's claim that the Commissioner delegated the administration of the Optional State Supplement funds to the Secretary, and thereby abdicated his state constitutional duty to comply with state and federal laws, the Court views this claim as untenable.

· A state's delegation to the federal government of the administration of supplementary assistance to SSI recipients is permissible pursuant to 42 U.S.C. § 1382e. In turn, New York Social Services Law § 211(1), authorizes the NYDSS to enter into an agreement with the HHS, whereby HHS would "administer the state program of additional payments including the eligibility of individuals and couples for such payments." On July 12, 1974, DSS and HHS entered into such an agreement. *See Casey v. New York State Department of Social Services, supra,* 391 N.Y.S.2d at 176–177 (setting forth text of the agreement, an upholding its validity). Given the statutory authorizations by Congress and the state legislature, the Commissioner's delegation of administrating the OSS funds to the Secretary is not violative of any statute.

The Court also views as equally untenable the plaintiff's claim that by delegating to HHS the administration of OSS payments, the Commissioner has failed to comply with state and federal case law. The plaintiff's contention is another attempt at arguing that

the Commissioner's decision to terminate OSS payments to the plaintiff was erroneous, because the holding in *Navarro* was not followed. The Court rejects any such argument.

Similarly, the Court rejects the contention that, in terminating the plaintiff's Medicaid benefits, the Commissioner failed to follow federal case law and, therefore, abdicated his constitutional responsibilities. As explained above, *Navarro* is distinguishable from the facts of this case, and is inapposite here. Moreover, the Commissioner's conclusion that the Surrogate's Order provided for the availability of the guardianship accounts to the plaintiff, is supported by evidence in the record.

 In his opposition papers to the defendants' motions, the plaintiff raises a third claim against the Commissioner that is not set forth in the pleadings. The plaintiff alleges that, with respect to his allegations concerning the denial of Medicaid payments, the Commissioner's employees and delegates violated the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), Pub.L. No. 100–360, 100 U.S.C.C.A.N. (102 Stat.) 683 (codified as amended primarily at 42 U.S.C. § 1395), and the State Medicaid Plan.

According to the plaintiff, the MCCA repealed a prior law that had assessed a period of ineligibility for SSI and community based Medicaid recipients who had transferred their assets into a trust at less than market value. Under the prior statute, the uncompensated value of the transferred asset counted towards the SSI and Medicaid eligibility limits for a certain period of time. Under the new statute, 42 U.S.C. § 1382b(c), and the implementing regulation, 20 C.F.R. § 416.1246(f), the uncompensated value of such transfers occurring after July 1, 1988 would no longer count towards eligibility.

According to the plaintiff, these changes to the SSI and Medicaid statutes allow the guardians to transfer Frerks's settlement funds to a SNT without losing his eligibility for Medicaid. The plaintiff alleges that in the proceedings before the Surrogate requesting a transfer of Frerks's accounts to a SNT, counsel for the Commissioner never informed the Surrogate of this change in law.

By not doing so, the plaintiff contends that the Commissioner followed a policy of violating the provisions in the MCCA and State Medicaid Plan allowing such transfers to a SNT.

In the first place, the Court believes it was the plaintiff's duty, as the applicant before the Surrogate, to adequately inform the Surrogate of the changes in the Medicaid law. Secondly, in the Court's view, the plaintiff's new claim against the Commissioner is irrelevant to the relief the plaintiff seeks in the Complaint: vacating the Commissioner's decision to terminate Frerks's Medicaid benefits. Whether or not the *Surrogate* was misinformed about the changes in the Medicaid law with respect to the transfer of Frerks's assets to a SNT does not in any way implicate the *Commissioner's* decision to terminate Frerks's Medicaid eligibility. They are two separate issues.

 In effect, this new claim by the plaintiff is an attack on the Surrogate's decision denying the plaintiffs' application to transfer the guardianship accounts to a SNT, and a pretense for this Court to directly review the Surrogate's decision. This Court, however, does not have the jurisdiction to review the Surrogate's decision. *See, e.g., District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 463, 103 S.Ct. 1303, 1305, 75 L.Ed.2d 206 (1983) (state court judgments are directly reviewable only to the United States Supreme Court); *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 284–86, 90 S.Ct. 1739, 1742–43, 26 L.Ed.2d 234 (1970) (lower federal courts do not have the power to review directly cases from state courts); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (the district court does not possess appellate jurisdiction over decisions of the state courts).

Moreover, even if the Court had jurisdiction over this new claim, it would abstain under the doctrine of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), because a decision rendered by this Court with respect to the transfer of Frerks's assets to a SNT for the purposes of

**354**

Medicaid eligibility would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–15, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976); *Bethpage Lutheran Service, Inc. v. Weicker,* 965 F.2d 1239, 1243, 1247 (2 Cir. 1992). This Court notes that very recently, a decision denying the transfer of a tort settlement to an SNT for purposes of Medicaid eligibility was reconsidered and reversed by the New York State Supreme Court, based on changes in the federal and state laws governing the Medicaid program. *See In the Matter of Moretti,* 606 N.Y.S.2d 543 (Sup.Ct. Kings Cty.1993).

The proper avenue of relief for the plaintiff with respect to the Surrogate's decision, is to appeal the Surrogate's decision to the Appellate Division of the New York State Supreme Court.

Accordingly, the Court rejects all the claims asserted against the Commissioner, and grants the Commissioner's motion in the alternative for summary judgment dismissing the Complaint as a matter of law. The Court need not reach the Commissioner's argument with respect to the plaintiff's failure to name the NCDSS as a party to this case.

### CONCLUSION

The Secretary's Motion for a judgment on the pleadings in favor of the Secretary is granted. The Secretary applied the correct legal standard in determining that the plaintiff's guardianship accounts are a "resource" available to the plaintiff within the meaning of 42 U.S.C. § 1382 and 42 C.F.R. § 410.- 1201. Moreover, there is substantial evidence in the record to support the Secretary's determination.

The Commissioner's alternative motion for summary judgment in his favor is granted. The Commissioner has not violated any of the applicable constitutional, statutory, or regulatory provisions with respect to the administration of the OSS and Medicaid programs as they apply to the plaintiff, or with respect to the denial of the plaintiff's OSS and Medicaid benefits. To the extent the plaintiff seeks review in this Court of the Surrogate's decision denying the transfer of

the plaintiff's assets to a supplemental need trust, the court must dismiss that claim for lack of subject matter jurisdiction.

The plaintiff's Complaint is dismissed in its entirety as a matter of law. The Clerk of the Court is advised that this action closes the case.

**SO ORDERED.**