97 F.3d 681
 RICHMOND BORO GUN CLUB, INC., New York State Rifle and
Pistol Association, Inc. and John Does I Through
VI, Plaintiffs-Appellants,
and
National Rifle Association of America, Plaintiff,
v.
CITY OF NEW YORK, and Lee P. Brown In His Official Capacity
as Police Commissioner of the City of New York,
Defendants-Appellees.
 No. 1209, Docket 95-7944.
 United States Court of Appeals,
Second Circuit.
 Argued March 15, 1996.
Decided Oct. 10, 1996.
 
 Stephen P. Halbrook, Fairfax, VA (Susan Courtney Chambers, New York City, of counsel), for Plaintiffs-Appellants.
 Alan Beckoff, New York City Law Dept, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, New York City, on the brief, Stephen J. McGrath, Albert Fredericks, New York City, of counsel), for Defendants-Appellees.
 (Ira S. Sacks, on the brief, Jocelyn Lee Jacobson, Deborah Lifshey, Fried, Frank, Harris, Shriver & Jacobson, New York City, Dennis A. Henigan, Gail Robinson, Center To Prevent Handgun Violence, Washington, DC, all of counsel), for Amicus Curiae Center To Prevent Handgun Violence, New York Association Of Chiefs Of Police, Detectives' Endowment Association, Captains Endowment Association, Lieutenants Benevolent Association and Sergeants Benevolent Association.
 Before: FEINBERG, WALKER, and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Appellants Richmond Boro Gun Club, the New York State Rifle and Pistol Association, and John Does I through VI brought this action challenging New York City Local Law 78 of 1991, amending New York City Administrative Code § 10-131 & §§ 10-301 through 10-310 (hereafter "Local Law 78"), which criminalizes the possession or transfer of certain assault weapons and ammunition feeding devices within the city.[1] The Unites States District Court for the Eastern District of New York (Reena Raggi, Judge ) denied plaintiffs' initial request for a preliminary injunction and, in a well reasoned opinion, granted defendants' motion for summary judgment. Richmond Boro Gun Club, Inc. v. City of New York, 896 F.Supp. 276 (E.D.N.Y.1995). On appeal, plaintiffs press only three of the arguments raised below. Before this court plaintiffs argue that Local Law 78 (1) is unconstitutionally vague; (2) is preempted by federal laws and regulations establishing the Civilian Marksmanship Program; and (3) deprives them of rights to liberty and property without due process. We agree with the district court that plaintiffs' theories do not justify judicial revocation of the decisions of the New York City Council.
 
 I. BACKGROUND
 
 2
 Section 10 of Local Law 78, which added a new Section 10-303.1 to Chapter 3 of the New York City Administrative Code, criminalizes, subject to certain exceptions, possession or transfer of assault weapons. Section 6 of Local Law 78, which amended Section 10-301 of the New York City Administrative Code, defines "Assault Weapon" as
 
 
 3
 (a) [a]ny semiautomatic centerfire or rimfire rifle or semiautomatic shotgun which has one or more of the following features:
 
 
 4
 1) folding or telescoping stock or no stock;
 
 
 5
 2) pistol grip that protrudes conspicuously beneath the action of the weapon;
 
 
 6
 3) bayonet mount;
 
 
 7
 4) flash suppressor or threaded barrel designed to accommodate a flash suppressor;
 
 
 8
 5) barrel shroud;
 
 6) grenade launcher; or
 
 9
 7) modifications of such features, or other features, determined by rule of the commissioner to be particularly suitable for military and not sporting purposes. In addition, the commissioner shall, by rule, designate specific semiautomatic centerfire or rimfire rifles or semiautomatic shotguns, identified by make, model and/or manufacturer's name, as within the definition of assault weapon, if the commissioner determines that such weapons are particularly suitable for military and not sporting purposes.
 
 
 10
 (b) Any shotgun with a revolving-cylinder magazine.
 
 
 11
 (c) Any part, or combination of parts, designed or redesigned or intended to readily convert a rifle or shotgun into an assault weapon.
 
 
 12
 (d) "Assault weapon" shall not include any rifle or shotgun modified to render it permanently inoperative.
 
 
 13
 New York City Administrative Code § 10-301(16) (emphasis on sections challenged on vagueness grounds). Local Law 78 also defines and criminalizes the possession and transfer of "Ammunition feeding devices," which are "[m]agazines, belts, feedstrips, drums or clips capable of being attached to or utilized with firearms, rifles, shotguns, or assault weapons." Local Law 78, §§ 4, 6 (creating New York City Administrative Code §§ 10-131.i & 10-301(17)). The law bans possession or disposition of any such feeding devices capable of holding more than five rounds of ammunition designed for use with a rifle or shotgun, Local Law 78, § 13 (amending New York City Administrative Code § 10-306), or capable of holding more than seventeen rounds of ammunition if designed for use with a handgun, Local Law 78, § 4 (creating New York City Administrative Code § 10-131(i)(6)).
 
 
 14
 The law exempts from its coverage state and city police or peace officers carrying such items in the lawful performance of their duties, and members of the federal or state armed forces who are authorized by law to carry these weapons. Local Law 78, § 12 (amending New York City Administrative Code § 10-305).
 
 II. DISCUSSION
 
 15
 The district court assumed the truth of all of plaintiffs' allegations and applied the law to those allegations in granting summary judgment for New York City. Our review, then, is of the district court's legal conclusions. We review such conclusions de novo. Motor Vehicle Mfrs. Ass'n v. New York Dep't of Envtl. Conservation, 79 F.3d 1298, 1304 (2d Cir.1996).
 
 1. The "Void for Vagueness" Argument
 
 16
 "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). The principle underlying the doctrine is that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." Id.
 
 
 17
 Plaintiffs claim that Local Law 78 is unconstitutionally vague both on its face and as applied. They argue that several of the phrases used to identify an "assault weapon," such as a gun having "a pistol grip that protrudes conspicuously beneath the action," "no stock," "a threaded barrel designed to accommodate a flash suppressor," and "a barrel shroud," fail to provide notice of what is prohibited and is therefore vague facially and as applied to the rifles and shotguns owned by the plaintiffs.
 
 
 18
 Plaintiff's facial vagueness challenge is plainly without merit. They concede that the local law does not infringe upon a fundamental constitutional right. Courts rarely invalidate a statute on its face because of alleged vagueness if the statute does not relate to a fundamental constitutional right (usually first amendment freedoms) and if the statute provides "minimally fair notice" of what the statute prohibits. 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 17.8 n. 22 (2d ed. 1992). See also Chapman v. United States, 500 U.S. 453, 467, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991) ("vagueness claim must be evaluated as the statute is applied to the facts of [the] case" when "First Amendment freedoms are not infringed by the statute.").
 
 
 19
 Plaintiffs could perhaps succeed on a facial vagueness challenge if they could show that the law is impermissibly vague "in all of its applications." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). However, it is obvious in this case that there exist numerous conceivably valid applications of Local Law 78. The district court's analysis of plaintiffs' facial challenge is excellent and we readily adopt it:
 
 
 20
 [Plaintiffs] hypothesize some ambiguous application for each factor used by New York City to identify the semiautomatic rifles and shotguns that will be deemed assault weapons under Local Law 78. But such conjectures hardly suffice to establish vagueness in all applications of the law.
 
 
 21
 For example, plaintiffs complain that defining assault weapons to include rifles or shotguns with a "folding or telescoping stock or no stock" is vague because some person might unwittingly violate the law by removing a stock for a brief period to clean or transport a weapon. This possibility ignores the "core" category of weapons within this factor that are clearly intended to be the focus of the legislation: those either equipped with folding stocks or with permanently-removed stocks. The governmental concern is that such weapons can be discharged in a way that is characteristic of military and not sporting weapons. Since persons have plain notice of the applicability of the law to this core group of weapons, there is no facial vagueness in this factor.
 
 
 22
 Plaintiffs further complain that defining an assault weapon by reference to "a pistol grip that protrudes conspicuously beneath the action of the weapon" is impermissibly vague because it is unclear what is meant by "conspicuously." The argument is disingenuous. As is made plain in the [Report and Recommendation of the ATF Working Group on the Importability of Certain Semiautomatic Weapons (1989) ("ATF Report") ] prepared in connection with that agency's ban on the importation of assault weapons, most sporting firearms "employ a more traditional pistol grip built into the wrist of the stock of the firearm." ATF Report at 7 (emphasis added). By contrast, "[t]he vast majority of military firearms employ a well-defined pistol grip that protrudes conspicuously beneath the action of the weapon." Id. (emphasis added). The latter design is favored in military weapons because it aids in "one-handed firing" at hip level, a technique sometimes required in combat, but "not usually employed in hunting or competitive target competitions" where a firearm is held with two hands and fired at shoulder level. Id. Although plaintiffs argue that any rifle can be shot with one hand and at hip level, that is hardly the point. This factor aims to identify those rifles whose pistol grips are designed to make such spray firing from the hip particularly easy. Even a cursory review of the photographs submitted by the parties demonstrates that a sufficient number of assault rifles are so plainly equipped with grips that protrude conspicuously that it cannot be said that the factor is vague in all applications. Indeed, the court notes that Congress itself chose the very same formulation as a defining term for assault weapons in federal legislation. 18 U.S.C. § 921(a)(30)(B)(ii).
 
 
 23
 Plaintiffs submit that defining assault weapons with reference to features such as a "bayonet mount," "a flash suppressor or threaded barrel designed to accommodate a flash suppressor," a "barrel shroud," or a "grenade launcher," violates due process because a host of items exist that, although not specifically intended to serve these purposes, could arguably do so, thereby subjecting an unsuspecting gun owner to criminal liability. This argument, however, defeats itself. As already noted, when a statute is challenged for facial vagueness, the issue is not whether plaintiffs can posit some application not clearly defined by the legislation. The issue is whether all applications are impermissibly vague. Certainly, there is no vagueness when the statute is applied to firearms advertised to include parts identified as bayonet mounts, flash suppressors, barrel shrouds, or grenade launchers.
 
 
 24
 Finally, plaintiffs complain that Local Law 78 is impermissibly vague in defining as an assault weapon "[a]ny part, or combination of parts, designed or redesigned or intended to readily convert a rifle or shotgun into an assault weapon." They submit that a rifle manufacturer's intent in designing a gun may not easily be discernable from the mere appearance of a weapon.
 
 
 25
 The Supreme Court has, however, already rejected vagueness challenges to similar language in other statutes. In Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., [455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)], the Court upheld a local ordinance requiring businesses to obtain licenses if they sold items "designed or marketed for use with illegal cannabis or drugs." The "designed" standard was held to encompass "at least an item that is principally used with illegal drugs by virtue of its objective features." 455 U.S. at 501, 102 S.Ct. at 1195. Although application of this standard might, in some cases, be ambiguous, it was sufficient to cover "at least some of the items" sold by Flipside and, thus, to preclude a facial vagueness challenge. Similarly, the vagueness challenge to the "marketed" standard was rejected in light of the implicit scienter element, "since a retailer could scarcely 'market' items 'for' a particular use without intending that use." Id. at 502, 102 S.Ct. at 1195. See also Posters 'N' Things, Ltd. v. United States, U.S. , ----, 114 S.Ct. 1747, 1750, 128 L.Ed.2d 539 (1994) (upholding federal statute that defined drug paraphernalia as items "primarily intended ... for use" or "designed for use" with controlled substances, although holding that neither standard required proof of scienter).
 
 
 26
 Applying the same analysis to this case, this court is persuaded from many of the submitted advertisements for semiautomatic rifles that the objective features of at least some of these firearms clearly bring them within the "designed" standard of Local Law 78. Whether the "intended to convert" standard does or does not require proof of scienter is a question that can be left for the New York courts. The fact remains that plaintiffs have failed to show that all applications of Local Law 78 are unconstitutionally vague.
 
 
 27
 896 F.Supp. at 289-90.
 
 
 28
 For similar reasons, appellants' as-applied vagueness challenge is without merit. Appellants have initiated a pre-enforcement challenge to the local law. This court has refrained from ruling on an as-applied challenge to an allegedly vague statute when the ordinance would be valid as applied to at least one activity in which plaintiff is engaged. Brache v. County of Westchester, 658 F.2d 47, 52 (2d Cir.1981), cert. denied, 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982). This conclusion was based upon principles of judicial restraint, principles that bear some resemblance to the doctrine of abstention. In Brache, the court sought to avoid:
 
 
 29
 unnecessary, premature, or unduly broad pronouncements on constitutional issues, the intrusiveness of a court's considering all the situations in which a law could possibly be applied, and the possibility of a limiting construction being placed on the law in the event an application of questionable validity was concretely presented.
 
 
 30
 Id. This court has applied these considerations when, as here, litigants "engage in some conduct that could validly be prosecuted under a statute, [yet] challenge the statute's application to other conduct in which they are currently engaged." Id. New York City may choose to limit enforcement of the local law to weapons clearly proscribed by the law, such as those specifically identified by the police department. It would be premature to entertain this vagueness challenge based on a speculative threat of arbitrary enforcement "until a broader use of the ordinance is actually initiated." Id. at 53. See also Village of Hoffman Estates, 455 U.S at 503-04, 102 S.Ct. at 1195-96 (employing similar reasoning in rejecting a pre-enforcement vagueness challenge to a village ordinance that banned the sale of any "items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs").
 
 2. The Preemption Challenge
 
 31
 Plaintiffs also claim that Local Law 78 is preempted by federal laws establishing the Civilian Marksmanship Program. Plaintiffs draw our attention to 10 U.S.C. § 4308 (1994), the statute which governs the Army's management of the Civilian Marksmanship Program, and its legislative history, to suggest that Local Law 78 contravenes Congressional intent.
 
 
 32
 As the district court explained, 896 F.Supp. at 286, Congress established the Civilian Marksmanship Program ("CMP") in 1904. The purpose of CMP was to familiarize young men with the use of firearms and to develop their marksmanship proficiency should they ever be called to duty in the armed forces. CMP funds, which came from army appropriations, provided for, among other things (1) the operation and maintenance of rifle ranges, (2) the instruction of citizens in marksmanship, (3) the promotion of practice in the use of rifled arms, (4) the maintenance and management of matches and competition in the use of those arms, and (5) the sale of surplus M-1 Garand rifles to citizens over 18 who are members of approved gun clubs. 10 U.S.C.A. § 4308 (1959 & Supp.1996). The program is administered by the Director of Civilian Marksmanship, who is appointed by the President. The director approves local gun clubs, such as plaintiff Richmond Boro Gun Club, for participation in the program. The Richmond Boro club has received a number of weapons from the federal government pursuant to federal regulations, possession of which are criminalized by the local law. In addition, several its members have purchased surplus M-1s, which they can no longer store or use in New York City. CMP regulations forbid them from selling or giving away these weapons.
 
 
 33
 As a participating club, Richmond Boro must conduct an active rifle marksmanship training program for at least nine months each year. 32 C.F.R. § 543.13. Its members may participate in the National Matches, an annual marksmanship competition conducted each year by the Secretary of the Army. See 10 U.S.C. § 4312. These matches are held at Camp Perry Ohio. Competitors in these matches use M1 rifles, M14 rifles, and M16 rifles, all of which are criminalized by the local law.
 
 
 34
 After the parties filed briefs in this case, Congress repealed the very statute on which plaintiff's rely in their preemption argument. See Corporation for the Promotion of Rifle Practice and Firearms Safety Act ("CPRPFSA"), Pub.L. No. 104-106, § 1624, 110 Stat. 186, 522 (1996) (repealing, inter alia, 10 U.S.C. § 4308). Rather than continuing the CMP program as an arm of the government, Congress privatized the operation of the CMP in the newly established private, non-profit, Corporation for the Promotion of Rifle Practice and Firearms Safety (hereafter "the corporation"). Id. §§ 1611-1615. The corporation "shall have responsibility for the overall supervision, oversight, and control of the [CMP]." Id. § 1612(a). The new corporation is to be funded by the collection of fees and donations. Id. § 1618(a). The new corporation is also authorized to sell firearms, ammunition, and other "accouterments," to qualified individuals. Id. § 1614(b)(2). However, such sales "are subject to applicable Federal, State, and local laws." Id. § 1614(e).
 
 
 35
 The transfer of these responsibilities to the corporation from the Army is to occur by September 30, 1996. Id. § 1612(d). And the new statute will take effect no later than October 1, 1996. Id. § 1624(c).
 
 
 36
 Because the old CMP statutes are not yet without force, we will conduct the preemption analysis under both the old and the new statutes. But the result is the same: there is no reason to render invalid the law passed by the New York City Council.
 
 
 37
 Consistent with the Supremacy Clause, state laws that interfere with or are contrary to the laws of Congress will not stand. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 210, 6 L.Ed. 23 (1824). However, there is a strong presumption against federal preemption of state and local legislation. California v. ARC America Corp., 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). This presumption is especially strong in areas traditionally occupied by the states, such as health and safety measures. English v. General Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). A state measure is preempted when it is impossible to comply with both state and local law, or the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. California v. Federal Energy Regulatory Comm'n, 495 U.S. 490, 506, 110 S.Ct. 2024, 2033-34, 109 L.Ed.2d 474 (1990). Plaintiffs do not claim that it is impossible to comply with the requirements of both CMP and Local Law 78. Instead, they claim that the local law stands as an obstacle to the goals expressed by Congress in the CMP legislation and regulations.
 
 
 38
 A court should only find that a state or local law is preempted by congressional legislation if it determines that Congress intended such preemption. Penn Dairies, Inc. v. Milk Control Comm'n of Penn., 318 U.S. 261, 275, 63 S.Ct. 617, 623-24, 87 L.Ed. 748 (1943). This intent should not lightly be inferred. Id.
 
 
 39
 Judge Raggi comprehensively addressed plaintiffs' preemption argument under the old statute, 896 F.Supp. at 285-89, and, again, we need not gild the lily. In the words of the district court:
 
 
 40
 Local Law 78 does not prohibit city residents from receiving CMP-issued rifles nor from purchasing M-1 Garand rifles. It requires only that they store and use these weapons outside city limits. Nothing in the applicable federal laws or regulations requires a CMP club or its members to store or practice with these rifles in New York City or at any particular site. Plaintiffs' real complaint then is not conflict between federal and local law but personal inconvenience, since they are barred from keeping assault weapons in their homes and from practicing with them at their club's Staten Island rifle range. But such inconvenience is of no legal import. Home storage of government-issued weapons is only permitted under federal regulation; it is not mandated. 32 C.F.R. § 543.17(g)(5)(ii). The only storage site actively "encouraged" by federal regulation is storage at military or police facilities. 32 C.F.R. § 543.17(g)(5)(vi). Since such storage would necessarily require civilians to travel at least some distance from their homes to gain access to their rifles, and since such access might further be limited by the hours when such facilities are open to the public, it necessarily follows that no link exists between the federal interest in promoting civilian marksmanship and the site where persons store their weapons. Similarly, since federal law does not require CMP clubs to maintain their own ranges, the fact that plaintiffs will not be able to use assault rifles on their Staten Island range but will have to use some other facility does not evidence a conflict requiring preemption.
 
 
 41
 896 F.Supp. at 288. We cannot improve on the district court's analysis, except to add a brief discussion of the new statute.
 
 
 42
 Congress passed the CPRPFSA as part of the National Defense Authorization Act for Fiscal Year 1996. The CPRPFSA shows that Congress believes the CMP program should continue only if there is enough private financial support, and not as an arm of the government. That Congress has seen fit to further remove the promotion of the purposes originally served by the CMP from the operation of the federal government is further evidence that the New York City legislation is not preempted by federal law. Even if there were any question regarding Congress' intent to override local firearm legislation, it is resolved by the new statute's specific deferral to local law. CPRPFSA § 1614(e) (quoted above).
 
 3. The Due Process Claim
 
 43
 Appellants' final claim is that New York state law creates liberty and property interests in the possession of rifles and shotguns which are violated by the local law, thus creating a violation of the Due Process Clause of the Fourteenth Amendment. They point to several provisions of New York law, including (1) the statutory Bill of Rights, which provides that "[a] well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed," N.Y. Civ. Rights Law art 2, § 4 (McKinney 1992); (2) a State Penal law provision providing the right to purchase a rifle or shotgun in a state contiguous with New York and transport it into New York, N.Y. Penal Law § 265.40 (McKinney 1989 & Supp.1996); and (3) licensing provisions for pistols and their ammunition feeding devices. N.Y. Penal Law § 400.00 (McKinney 1989 & Supp.1996).
 
 
 44
 It is not clear whether plaintiffs assert a substantive or a procedural due process challenge to the local law. Assuming the claim is one of substantive due process, it is rejected. As the district court pointed out, at least one circuit has held that violations of state law generally do not give rise to substantive due process claims. Weimer v. Amen, 870 F.2d 1400, 1405-06 (8th Cir.1989). However, this circuit has held that "[s]ubstantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.' " Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir.1995). The local law challenged by appellants is not sufficiently drastic to trigger substantive due process rights; rather, it is a rational legislative response to increased assault weapon violence in the city of New York. See Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 145 (2d Cir.1994) (rejecting substantive due process challenge to legislative act since law was rationally related to a legitimate government interest).
 
 
 45
 If, plaintiffs' due process argument is procedural in nature, it is similarly without merit. Even assuming they have a liberty or property interest in the possession of assault weapons, appellants cannot successfully challenge a legislative act on procedural due process grounds. "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process--the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees." 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 17.8 (2d ed. 1992). See also Interport Pilots Agency, 14 F.3d at 142 ("Official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause.... [D]ue process does not require any hearing or participation in 'legislative' decisionmaking other than that afforded by judicial review after rule promulgation"). Procedural due process has not been violated in this case because plaintiffs can (and do) challenge the legislative ordinance in federal or state court on the ground that it violates their substantive state or federal rights.
 
 III. CONCLUSION
 
 46
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The National Rifle Association was also a plaintiff in the case, but has not joined in the appeal