Steven L. ROSA (Deceased), Christina Rosa, Joshua Rosa, Amber Rosa, and Nathaniel Rosa, Petitioners,

v.

WARNER ELECTRICAL CONTRACTING, Colorado Compensation Insurance Authority, and the Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 92SC689.

Supreme Court of Colorado, En Banc.

Jan. 31, 1994.

Rehearing Denied Feb. 28, 1994.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, for petitioners.

Michael J. Steiner, Denver, for respondents Warner Elec. Contracting and Colo. Compensation Ins. Authority.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Mary Karen Maldonado, First Asst. Atty. Gen., John D. Baird, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Rosa v. Warner Electrical Contracting,* 849 P.2d 845 (Colo.App.1992), which held that section 8–50–103, 3B C.R.S. (1986) (now codified with

changes at section 8–42–114, 3B C.R.S. (1993 Supp.)), does not violate the Supremacy Clause of the United States Constitution. We agree with the court of appeals that section 8–50–103 is not preempted by the Social Security Act.

## I

Steven L. Rosa (Rosa) was electrocuted while working in the course and scope of his employment. Rosa's employer, Warner Electrical Contracting Company, and its insurer, Colorado Compensation Insurance Authority (collectively the respondents), admitted liability for the death. At the time of his death, Rosa's wife and three children (collectively the petitioners) were totally dependent on him for support. Because Rosa was killed in the course and scope of his employment, petitioners are eligible for workers' compensation death benefits in the amount of $1,385 per month. § 8–50–103, 3B C.R.S. (1986) (now codified with changes at section 8–42–114, 3B C.R.S. (1993 Supp.)).[1]

Pursuant to 42 U.S.C. § 402(d) (1988), the Social Security Administration awarded each of Rosa's children "children's benefits" in the amount of $356 per month.[2] Pursuant to 42 U.S.C. § 402(g) (1988), Rosa's widow was awarded $356 per month in "mother's benefits."[3]

On September 14, 1987, an administrative law judge (ALJ) for the Division of Labor entered an order regarding the petitioners' workers' compensation benefits. Because the petitioners received $1,424 per month in social security survivors' benefits, and because this exceeded the $1,385 per month payable under the Workers' Compensation Act, the ALJ reduced the petitioners' workers' compensation benefits to zero pursuant to the offset provision in section 8–50–103. This order was not appealed. Subsequently,

however, Rosa's wife and children retained counsel and objected to the offset. As a result, the Director of the Division of Labor entered an order reopening the claim to allow the petitioners to address the constitutionality of the offset.

An ALJ conducted a hearing regarding the offset and ruled that she did not have the authority to address whether the offset was constitutional. Therefore, the ALJ allowed the offset to stand. The petitioners appealed the ALJ's order to the Industrial Claim Appeals Office (ICAO) which affirmed the ALJ stating that the ICAO had no jurisdiction to consider the constitutionality of the statute.

The petitioners appealed the decision of the ICAO and the court of appeals held that because 42 U.S.C. § 424a(d) (1988) permits a state to offset workers' compensation benefits, section 8–50–103 does not violate the Supremacy Clause of the United States Constitution. We granted certiorari to determine whether section 8–50–103 violates the Supremacy Clause. Both parties concede that section 42 U.S.C. § 424a(d) relates to disability benefits and does not apply to survivors' benefits. Although we affirm the result reached by the court of appeals, we disagree with the court of appeals analysis.

## II

The preemption doctrine is derived from the Supremacy Clause in Article VI, Clause 2 of the United States Constitution. There are several ways Congress can preempt state law. Congress can expressly declare that states are precluded from legislating in an area of law. When Congress does not expressly preclude state legislation, state legislation may be preempted as a result of implied preemption or conflict preemption. *See Pacific Gas & Elec. Co. v. State Energy*

1. Rosa's average monthly wage was $2,078. Absent any reduction for Social Security benefits, two-thirds of this amount, $1,385, would have been payable each month as death benefits under the Workers' Compensation Act.

2. Children's benefits are paid to the surviving dependent children of a deceased wage earner. 42 U.S.C. § 402(d)(1), 402(s) (1988). The benefits are equal to seventy-five percent of the de-

ceased wage earner's primary insurance amount. *Id.* at § 402(d)(2) (1988).

3. "Mother's benefits" are payable only until the last dependent child ceases to become eligible for children's benefits. Like children's benefits, mother's benefits are paid at the rate of seventy-five percent of the deceased wage earner's primary insurance amount. 42 U.S.C. § 402(g)(2) (1988).

*Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). The petitioners do not claim that express language exists anywhere in the Social Security Act which prohibits a state from offsetting social security survivors' benefits against workers' compensation death benefits. Instead, the petitioners maintain that Congress implicitly forbids states from offsetting social security survivors' benefits against workers' compensation death benefits and that the Colorado law interferes with, or contradicts, federal policy.

Preemption will be implied if the federal regulatory scheme is so pervasive, or the federal interest is so dominant, that state law must be assumed to be preempted. Implied preemption is sometimes referred to as a congressional intent to "occupy the field." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 748, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985). To determine if a federal law implicitly preempts a state statute, a court must ascertain Congress' intent in enacting the federal statute. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *see also CSX Transp., Inc. v. Easterwood,* —— U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (stating that courts must seek "evidence of pre-emptive purposes . . . in the text and structure of the statute"). Similarly, in determining whether a state law conflicts with a federal law: "The purpose of Congress is the ultimate touchstone." *Retail Clerks Int'l Assoc., Local 1625 v. Schermerhorn,* 375 U.S. 96, 100, 84 S.Ct. 219, 221, 11 L.Ed.2d 179 (1963).

An analysis of federal preemption issues begins with "the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). When Congress legislates "in a field which the States have traditionally occupied" courts will not apply preemption unless that

is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

The petitioners contend that two provisions of the Social Security Act, 42 U.S.C. § 402 and 42 U.S.C. § 407, set forth a policy that is inconsistent with the Colorado offset provision in section 8–50–103 and thus Congress implicitly preempted the Colorado statute. Neither section 402 nor section 407 indicates that Congress intended to prohibit states from offsetting social security survivors' benefits against workers' compensation death benefits.

## A

The petitioners assert that because Congress addressed the interrelationship between social security disability benefits and workers' compensation disability benefits, but was silent with regard to the interrelationship between social security survivors' benefits and workers' compensation death benefits, Congress intended to forbid states from offsetting survivors' benefits.[4]

Section 424a allows the federal government to offset state workers' compensation disability benefits against social security disability benefits. 42 U.S.C. § 424a (1988). Congress also provided that if a state offsets federal social security benefits, the state offset prevails. *Id.* Therefore, the federal government is allowed to offset benefits unless the state enacts a reverse offset.[5] The petitioners contend that because 42 U.S.C. § 402 does not address the issue of federal or state offsets of benefits, Congress intended to prohibit states from offsetting survivors' benefits.

The petitioners rely on *Raskin v. Moran,* 684 F.2d 472 (7th Cir.1982), which addressed the issue of whether a Wisconsin statute was preempted by the Social Security Act. The

---

4. The basis of this argument is that because Congress' intent can be determined by applying ordinary rules of statutory construction, *CSX Transp., Inc. v. Easterwood,* —— U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993), the principle *expressio unius est exclusio alterius* is determinative of the preemption issue.

5. The federal government's deduction of a state's workmen's compensation disability benefits is referred to as an "offset"; a state's deduction of federal disability benefits is referred to as a "reverse offset."

state statute reduced the salaries of state reserve judges by an amount equal to their federal social security retirement benefits. The reserve judges contended that the statute was preempted by 42 U.S.C. § 403(f)(3) (1988). Section 403(f)(3) provides that any income earned after an individual's seventieth birthday will not be used to reduce his social security benefits. The Seventh Circuit held that the state statute was preempted by section 403(f)(3) and stated that although the state statutory offset did not directly affect the reserve judges' right to receive social security benefits, the effect of the offset was "the financial equivalent" of such a deprivation, and it represented "a clear frustration" of the purpose of the federal statute. *Raskin,* 684 F.2d at 479–80. The court based its decision on the "quite apparent underlying goals of the federal statute." *Id.* at 480.

*Raskin* held that section 403(f)(3) sets forth a clear statement of Congress' intent to prohibit offsetting social security retirement benefits against earned income. Courts that have interpreted *Raskin* have required an equally clear expression of Congress' intent before preempting a state statute. *See Barnes v. District of Columbia,* 611 F.Supp. 130, 134 (D.D.C.1985) (holding that a District of Columbia statute that reduced individuals' salaries dollar for dollar by the amount of their military pensions was not preempted because Congress did not express a "clear goal of protecting federal benefits"); *Harris v. State Dep't of Labor & Industries,* 120 Wash.2d 461, 843 P.2d 1056, 1060 (1993) (declining to infer preemption from Congress' silence because "42 U.S.C. § 424a does not contain clear evidence of congressional intent to preempt state reverse offsets of federal social security retirement benefits"); *Pyke v. Dep't of Social Services,* 182 Mich.App. 619, 453 N.W.2d 274, 277–78 (1990) (distinguishing *Raskin* because it was based on express statutory intent that federal payments not affect the receipt of other payments).

Section 424a by its express terms is only applicable to disability benefits. 42 U.S.C. § 424a (1988). The legislative history regarding the enactment, repeal, and reenactment of this section demonstrates that Congress was addressing the interrelation of dis-

ability programs. *See* Social Security Amendments of 1956, Pub.L. No. 84–880, 70 Stat. 816 (1956) (enacting offset for workers' compensation disability benefits); Social Security Amendments of 1958, Pub.L. No. 85–840, 72 Stat. 1013 (1958) (repealing the disability offset provision); Pub L. No. 89–97, 79 Stat. 406 (reenacting offset provision). The Supreme Court has declared: "It is self-evident that the offset reflected a judgment by Congress that the workmen's compensation and disability insurance programs in certain instances served a common purpose, and that the workmen's compensation programs should take precedence in the area of overlap." *Richardson v. Belcher,* 404 U.S. 78, 82, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

The legislative history of section 424a indicates that Congress was addressing only disability benefits and was not attempting to outline a broader policy which would affect other sections of the Social Security Act. Even if a broad federal policy could be derived from section 424a, that policy would be that a state offset takes precedence if it overlaps with federal law, not that a state is prohibited from offsetting federal benefits. A policy of allowing a state offset to take precedence over a federal offset is not evidence of Congress' intent to preempt state offsets. Thus, section 424a does not provide a sufficient expression of Congress' intent to infer federal preemption. Similarly, the section does not reflect a broad federal policy which conflicts with the Colorado law. *See New York Dep't of Social Servs. v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) (stating that the exercise of federal supremacy is not to be lightly presumed).

**B**

■ The "anti-alienation" provision of the Social Security Act provides that Social Security benefits shall not be "subject to execution, levy, attachment, garnishment, or other legal process...." 42 U.S.C. § 407(a) (1988). The petitioners assert that Congress' intent in enacting section 407 was to prevent social security benefits from being diminished and that because Colorado's offset statute diminishes the value of benefits provided under federal law, the statute is preempted.

The petitioners rely on two cases to support their position: *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 415, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973) (stating that the welfare department's attempt to attach a welfare recipient's bank account violated section 407); *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 590, 99 S.Ct. 802, 813, 59 L.Ed.2d 1 (1979) (holding that the anti-alienation provision of 45 U.S.C. § 231m (1988) prohibits an individual from receiving equivalent property to her husband's Railroad Retirement Benefits as part of a divorce). In both of these cases, the Court applied anti-alienation provisions to prohibit the use of a legal process to transfer social security benefits to a third party. The petitioners maintain that Colorado's offset provision qualifies as a transfer and the workers' compensation insurer is the third party that receives the benefit of the transfer.

In the context of offsetting social security benefits against pensions, courts have rejected the expansion of the anti-alienation provision. In *Hurd v. Illinois Bell Telephone Co.,* 136 F.Supp. 125, 141 (N.D.Ill.1955), *aff'd,* 234 F.2d 942 (7th Cir.), *cert. denied,* 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956), the plaintiffs contended that offsetting their social security retirement benefits against their pension benefits would cause "a corresponding shift in the economic benefit of the Social Security payment, and therefore a transfer under Sec. 407." The Illinois court rejected this argument and held that section 407 "was directed at the ordinary type of transfer or assignment such as a wage assignment" and that section 407 is "concerned only with guaranteeing that the worker would actually receive for his own use the amount due him under the Social Security Act." *Id.* In reaching this result, the court examined the legislative history of the Social Security Act and concluded that Congress was well aware that offsets would be taken and did not intend to invalidate these offsets.

Similarly, in *Lamb v. Connecticut General Life Insurance Co.,* 643 F.2d 108 (3d Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981), the Third Circuit ruled that offsetting social security cost-of-living increases against insurance benefits did not

violate section 407. The court distinguished *Philpott* and *Hisquierdo* because: "Both cases involved the transfer of Social Security payments to a third person through legal process. Here, Lamb's legal right to receive her Social Security payments and the increases is uncontested." *See also Raskin,* 684 F.2d at 476 n. 7 (holding offsetting social security benefits does not violate section 407); *Poisson v. Allstate Life Ins. Co.,* 640 F.Supp. 147 (D.Me.1986) (same); *Lessard v. Metropolitan Life Ins. Co.,* 568 A.2d 491 (Me.1989) (same); *Pyke,* 453 N.W.2d at 276 (Mich.App.1990) (same).

Section 407 is not applicable because it was designed to prevent the use of traditional legal process to allow a third party to receive another individual's social security benefits. In this case, the petitioners will receive their social security benefits. Section 8–50–103 does not prohibit a worker from receiving social security benefits. The statute reduces workers' compensation benefits because support of the worker's dependents is being provided under a federal program.

### C

Any doubt about Congress' intent to allow states to offset social security survivors' benefits against workers' compensation death benefits is resolved by Congress' decision to create the National Commission on State Workmen's Compensation Laws.

In 1969, the United States Congress created the National Commission on State Workmen's Compensation Laws (National Commission). Occupational Safety and Health Act of 1970, Pub.L. No. 91–596, 84 Stat. 1590, 1616–1618 (1970). Congress charged the National Commission with determining "the relationship between workmen's compensation on the one hand, and old-age, disability, and survivors insurance ... on the other hand." *Id.* at 1618.

In its report, the National Commission recommended that states offset social security survivors' benefits against workers' compensation death benefits. As a result of the National Commission's study, the Colorado General Assembly amended section 8–50–103 and, for the first time, enacted a one-hundred

percent social security offset for death benefits. *See L.E.L. Construction v. Goode,* 867 P.2d 875, 877 (Colo.1994).

Congress' decision to create a committee to study the relationship between social security survivors' benefits and worker's compensation death benefits belies the assertion that Congress intended to preempt state law when it enacted section 402. When Colorado amended section 8–50–103 and added the offset for social security survivors' benefits, it did so at the behest of a Commission designed to provide an alternative to federalization of the workers' compensation system.

### III

Section 8–50–103 is not preempted by the Social Security Act. Therefore, although we disagree with the reasoning of the court of appeals, the court of appeals reached the right result. Accordingly, we affirm.