**Beulah JOHNSON Plaintiff,**

v.

**Brian J. WING, as Commissioner of the Department of Social Services of the State of New York, Mary E. Glass, as Commissioner of the Department of Social Services of Westchester County, and Volunteers of America, Inc., Defendants.**

**No. 97 Civ. 6962(CLB).**

United States District Court,
S.D. New York.

July 9, 1998.

Westchester/Putnam Legal Services, White Plains, NY, for Plaintiffs, Michael D. Hampden, Dominigue Ghossein, of counsel.

State of New York, Office of Attorney General, Dennis C. Vacco, New York City, for defendant Brian J. Wing, James M. Hershler, of counsel.

Westchester County Attorney's Office, White Plains, NY, for defendant Mary E. Glass, Joan Waters, of counsel.

Kalkines, Arky, Zall & Associates, New York City, for defendants Volunteers of America, Inc., Andrew Schulz, of counsel.

### MEMORANDUM & ORDER

BRIEANT, District Judge.

Before the Court for decision are four summary judgment motions pursuant to Fed. R.Civ.P. 56, heard and fully submitted on June 5, 1998:(1) the motion of plaintiff Beulah Johnson (2) the motion of State defendant Brian J. Wing, the Commissioner of the Of- fice of Temporary and Disability Assistance for the State of New York ("the State"); (3) the motion of County defendant Mary E. Glass, the Commissioner of the Department of Social Services of Westchester County ("the County"); and (4) the motion of Volun- teers of America–Greater New York, Inc. ("VOA"). Also before the Court is VOA's motion pursuant to Fed.R.Civ.P. 13(g) for leave to file and serve a cross-claim against the County for indemnification in the event plaintiff obtains a damage award against VOA. For the reasons set forth below the summary judgment motions of the State, the County and VOA are granted and the motion of Ms. Johnson is denied. VOA's 13(g) mo- tion is also denied without prejudice.

### I. Background

Beulah Johnson is a 41 year old, disabled, homeless individual who resided at the York- town Country Residence ("the Shelter"), a temporary housing facility in Yorktown Heights, New York, for a period beginning in August 1996. The Shelter is operated by VOA (a not-for-profit corporation) pursuant to contract with the County. Under the contract the County pays VOA a per diem sum to provide emergency shelter, food, transportation, medical expenses and other services to Ms. Johnson, and others referred to VOA.

Ms. Johnson's sole source of income is a federal Supplemental Security Income grant ("SSI") of $580 (composed of a federal pay- ment of $494 and a state supplementation of $86) and $42 worth of food stamps per month. Federal Supplemental Security In- come ("SSI") provides financial assistance to aged, blind and disabled persons whose in- come falls below a statutory minimum. 42 U.S.C. §§ 1382–1382f. The County budgets an individual's SSI income when determining his or her eligibility for public assistance, and in Ms. Johnson's case required her to pay over all but $45 of her SSI income to VOA in order to remain at the Shelter. This budget required the County to pay VOA $2,489 per month to cover the remaining costs of main- taining Ms. Johnson at the Shelter.

Ms. Johnson signed an agreement to make her monthly payments and did so from August 1996 until May 1997. At that time she discontinued making payments, in part because she was told by another resident at her facility that the County was responsible for paying the Shelter cost and that some residents at the Shelter were not paying a contribution. On June 23, 1997 VOA notified Ms. Johnson that pursuant to its contract with the County her case would be referred back to the County and her accommodations at the Shelter would be canceled if her payment was not forthcoming. Ms. Johnson requested and was granted a state administrative appeal to challenge her required payment. On July 23, 1997 the State Department of Social Services ("State DSS") issued a Decision After Fair Hearing affirming the determination of the County that Ms. Johnson was responsible for contributing to her costs at the Shelter.

By agreement between the attorneys for the parties, Ms. Johnson's shelter was continued pending the outcome of this lawsuit. The County also extended the moratorium on evictions for nonpayment to all homeless SSI recipients in County sponsored shelters and to all disabled SSI recipients in the shelters as well.

Ms. Johnson brought this civil rights action in September 1997 to recover the money she paid to the County and VOA during the time she was there (approximately $4,894). She is also seeking declaratory and injunctive relief.[1] She alleges that the defendants' policy of requiring her to contribute to the cost of her services at the Shelter (1) violates the anti-alienation provisions of federal law, 42 U.S.C. § 1383(d)(1); (2) conflicts with federal law by reducing her federal SSI grant; (3) conflicts with federal law by depriving her of some or all of her state supplemental SSI payment in violation of 42 U.S.C. § 1382e and New York Social Services Law §§ 209 and 211; (4) violates her rights under the Equal Protection and Due Process clauses; and (5) violates her rights under 42 U.S.C. § 1983. Ms Johnson also asserts three claims under state law: the first against the State DSS for "erroneously rel[ying] on state social services regulations;" the second against the County for assuming legislative power in violation of Article three, section one of the New York Constitution by requiring contributions without statutory authority; and the third against VOA and the County alleging that they breached their contract and that plaintiff was a third-party beneficiary of that contract.

In essence Ms. Johnson alleges a statutory conflict. She concedes that an individual receiving SSI income must pay rent out of that income to a private landlord. However, she contends that her case, in which an SSI recipient is required to make payments to a County-run temporary housing shelter, is different because payment of SSI income to the State or the County conflicts with federal law. As set forth in more detail below this Court finds no basis in the context of this case for the distinction between payments to a private landlord and payments to a State or County landlord and rejects the contention that the defendants' policy conflicts with federal law. Furthermore, the statutory mandates which require the defendants to budget Ms. Johnson's SSI income while she lives in the Shelter provide an incentive for Ms. Johnson, as well as others similarly situated, to seek permanent housing. If the defendants did not budget Ms. Johnson's SSI income she would have no incentive to accept private housing, for if she did she would then be required to spend her SSI income on rent, food and the other forms of assistance which she now receives at the Shelter. The summary judgment motions of the defendants are granted and Ms. Johnson's federal claims are dismissed. This Court declines to exercise jurisdiction over her supplemental state law claims.

## II.   Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

---

**1.** Subsequent to the filing of this lawsuit Ms. Johnson obtained private housing.

matter of law." *See Silver v. City Universi-ty,* 947 F.2d 1021, 1022 (2d Cir.1991). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998); *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir.1997). Both sides of the litigation conceded at the hearing that there are no disputed issues of material fact.

### III. The Anti–Alienation Provision

■ In her first claim Ms. Johnson contends that the requirement that she contribute all but $45 of her monthly SSI grant violates the anti-alienation provision of the Social Security Act, 42 U.S.C. §§ 407(a) and 1383(d)(1), which forbids the enforcement of claims against persons receiving SSI benefits by means of "execution, levy, attachment, garnishment or other legal process." The State, the County and VOA argue that their policy does not violate the antiattachment statute because Ms. Johnson voluntarily chose to stay at the Shelter and pay her costs and because they have not initiated "legal process" in order to collect her SSI benefits.

■ The anti-alienation provision "imposes a broad bar against the use of any legal process" to reach social security benefits. *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). In *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) the Supreme Court held that an Arkansas statute authorizing the state to seize prisoners' social security benefits to pay for the cost of incarceration violated the anti-alienation provision. A number of courts subsequently held that the state may not compel contribution of social security benefits or SSI from *involuntarily* institutionalized persons. *See Crawford v. Gould,* 56 F.3d 1162 (9th Cir.1995) (psychiatric patients' social security benefits beyond the reach of state's attempt to recover expense of institutional care); *King v. Schafer,* 940 F.2d 1182 (8th Cir.1991) (Missouri officials barred from threatening legal action to recover costs of institutional care of mental patients out of social security benefits); *Brinkman v. Rahm,* 878 F.2d 263 (9th Cir.1989) (mental patients' federal benefits exempt from collection by Washington state). However, our Court of Appeals has already held that *voluntary* use of social security benefits to pay for the costs of institutional care does not violate the anti-alienation statute. *Fetterusso v. New York,* 898 F.2d 322, 328 (2d Cir.1990)

This Court finds that Ms. Johnson voluntarily agreed to her placement in emergency housing under the terms and conditions as they were explained to her. Therefore she was not compelled by the defendants to pay over her SSI benefits to VOA because she was not required to stay at the Shelter. On May 9, 1996, prior to moving to the Shelter, Ms. Johnson signed a "Client Agreement" with VOA. Every resident of the Shelter is required to sign this agreement which contains the rules and regulations of the Shelter and the responsibilities of the residents. The Client Agreement states in part 6, "I agree to pay my portion of the *per diem* cost when required by the Department of Social Services." Ms. Johnson contends that she signed this Agreement "because she had nowhere else to go," Johnson Affidavit ¶ 8, implying that she had no choice in the matter. However, she was free to seek private accommodations and ultimately did so.

Housing is in short supply in Westchester County, especially at the lower end of the economic scale. Persons situated as was the plaintiff, who become homeless, often require weeks or even months to find a suitable place to live, not only because of the shortage in housing, but also for lack of an efficient market in housing. Ms. Johnson is not a person who needs to be institutionalized. She simply found herself in a position with no place to stay. The County, through VOA, provides safe and suitable temporary housing for such persons who request shelter. As our Court of Appeals has held the anti-alien-

ation provision is inapplicable where, as here, there is no evidence that plaintiff's payment was not voluntary. *Fetterusso,* 898 F.2d at 328.

Ms. Johnson further contends that the policy of the defendants in evicting those individuals who do not make their monthly contributions is the type of coercion forbidden by the anti-attachment statute. However, the coercion with which the statute is concerned is the use of legal process or the threat of legal process. There is no statutory basis for the contention that a refusal to provide further services when payment is withheld is coercion or "legal process."

The anti-attachment statute provides that social security payments shall not be subject to "execution, levy, attachment, garnishment, or other legal process." Our Court of Appeals has held that "Congress intended the words 'or other legal process' to embrace not only the use of formal legal machinery but also resort to express or implied threats and sanctions." *Fetterusso,* 898 F.2d at 328 (citing *Moore v. Colautti,* 483 F.Supp. 357, 368 (E.D.Pa.1979), *aff'd,* 633 F.2d 210 (3d Cir. 1980)). In *Kriegbaum v. Katz,* 909 F.2d 70, 74 (2d Cir.1990) our Court of Appeals further clarified the meaning of "legal process," holding that repeated billings of an individual for the cost of institutional care, in an effort to obtain that individual's SSI benefits, did not violate the anti-attachment statute. The Court stated that, "[n]o element of compulsion attended [the state agency]'s actions. The record does not display any threats, express or implied, accompanied the billings." *Id.*

Ms. Johnson contends that the defendants' policy in this case went beyond simple billing and involved coercive practices. The coercive practices which she alleges were simply written and oral notifications by the County and VOA that if her monthly contributions were not received, her accommodations would be canceled. This is not "legal process" under the statute nor is it the type of "threat" accompanying billings which our Court of Appeals prohibited in *Kriegbaum.* The defendants did not take or threaten to take Ms. Johnson's SSI benefits. They merely calculated the amount of SSI she was

capable of contributing and then offset the amount of temporary housing assistance she would be eligible to receive.

In an analogous situation a number of courts have held that a state does not violate the anti-alienation statute by considering and offsetting social security benefits or SSI income when determining an individual's entitlement to benefits under the Aid to Families with Dependent Children Act. *See Bradley v. Austin,* 841 F.2d 1288, 1294 (6th Cir.1988) (inclusion of social security disability income for purposes of calculating eligibility for AFDC benefits not an assignment or transfer); *Gorrie v. Bowen,* 809 F.2d 508, 517 (8th Cir.1987) (same); *Rosado v. Bowen,* 698 F.Supp. 1191, 1199 (D.N.J.1987), *aff'd,* 860 F.2d 1179 (3d Cir.1988) (same); *Jackson v. Mullany,* 708 F.Supp. 483, 489 (N.D.N.Y. 1989) (same). The reasoning of the Eighth Circuit in *Gorrie* is particularly relevant here:

> The [AFDC] regulation does not subject Title II benefits to legal process, however, nor does it result in an assignment or transfer of benefits. It requires only that Title II benefit recipients apply for AFDC and have their incomes included in the family filing unit. This does not constitute a use of legal process to garnish or attach benefits... The Title II benefit checks are not actually received and then disbursed by the state agency; rather, they continue to go directly to the child's representative payee... The regulation results in an inclusion of income, not an assignment or transfer of Title II benefits.

*Id.* Courts have also held that offsetting SSI income or social security benefits against support granted elsewhere is not considered "legal process" under the anti-alienation statute. *See Lamb v. Connecticut Gen. Life Ins. Co.,* 643 F.2d 108, 110 (3d Cir.1981); *Rosa v. Warner Electrical Contracting,* 870 P.2d 1210, 1214 (Colo.1994); *see also Frazier v. Marine Midland Bank,* 702 F.Supp. 1000, 1003 (W.D.N.Y.1988) (bank's offset of SSI benefits not legal process). In addition, while not binding on this Court, the New York Supreme Court, Westchester County recently held that the offsetting of social security benefits from the cost of temporary

housing services is not a garnishment and does not violate the anti-attachment statute. *See Rodriguez v. Wing,* West Cty. Index No. 3826–97 (Oct. 3, 1997)

■ The exemption from legal process created by the anti-attachment statute was intended "to protect social security beneficiaries and their dependents from the claims of creditors." *Fetterusso,* 898 F.2d at 327. It was not designed to relieve beneficiaries of their obligations to pay for their own maintenance. Accordingly, this Court concludes that defendants' practice of requiring Ms. Johnson to contribute a portion of her SSI benefits towards the costs of her upkeep at the Shelter so long as she wished to stay there does not violate the anti-alienation provision of the Social Security Act.

## IV. Preemption Arguments

Ms. Johnson's next contention is that the defendants policy of requiring her to contribute a portion of her SSI benefits toward her temporary housing assistance costs conflicts with and is preempted by federal law governing (A) the SSI program and (B) the administration of supplemental state benefits through that program.

### A. The SSI Program

■ As noted earlier SSI provides financial assistance to aged, blind and disabled persons whose income falls below a statutory minimum. 42 U.S.C. §§ 1382–1382f. Financially needy individuals who meet certain standards may also receive New York State Safety Net Assistance. N.Y.S.S.L. § 158, subd. 1(a);[2] *Lee v. Smith,* 43 N.Y.2d 453, 462, 402 N.Y.S.2d 351, 373 N.E.2d 247 (1977). Temporary housing assistance is a form of Safety Net Assistance provided to eligible homeless individuals in order to meet their immediate needs for shelter. 18 N.Y.C.R.R. § 352.35(b)(4). To be eligible individuals (and families) must comply with the state regulations, 18 N.Y.C.R.R. § 352.35(c), which provide, *inter alia,* that individuals "must apply for and use any benefits and resources that will reduce or eliminate the need for tempo-

rary housing assistance." 18 N.Y.C.R.R. § 352.35(f). However, the local social services agency must provide a $45 allowance for monthly personal needs for clothing and incidentals for public assistance recipients in boarding homes and homeless shelters. 18 N.Y.C.R.R. § 352.8(f).

■ Ms. Johnson contends that the State's policy conflicts with the federal statutory scheme of providing SSI payments to homeless shelter residents and that as a result the State's policy should be preempted by the federal law. Under the Supremacy Clause state laws that interfere with or are contrary to federal laws will not stand. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). However, there is a strong presumption against federal preemption of state and local legislation. *Richmond Boro Gun Club, Inc. v. City of New York,* 97 F.3d 681, 687 (2d Cir.1996). A statute may expressly direct that state law is to be ousted from a given field or the federal preemption may be implied.

[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, ... or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Association of Int'l Automobile Mfrs., Inc. v. Abrams,* 84 F.3d 602, 607 (2d Cir.1996) (quoting *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). Our Court of Appeals has held that "[a] court should only find that a state or local law is preempted by congressional legislation if it determines that Congress intended such preemption." *Richmond Boro,* 97 F.3d at 687. Such congressional intent "should not lightly be inferred." *Id.*

**2.** The term "Safety Net Assistance" recently replaced the former term "Home Relief" through-

out the statute.

Ms. Johnson contends that through the SSI program Congress intended to *"guarantee* the availability of *full* SSI benefits to all homeless persons in accordance with federal policies and rules," Pltf's Memo p. 24, and that the defendants' policy stands as an obstacle to that federal policy. In support of her argument Ms. Johnson cites various SSI provisions [3] which in her view establish that Congress intended to occupy exclusively the field of eligibility for SSI benefits.

In order to resolve this motion this Court need not decide whether Congress intended to legislate exclusively in the field of eligibility for SSI benefits because the State's policy does not interfere with Ms. Johnson's eligibility for, or receipt of, federal SSI benefits. The State's rules regarding temporary housing assistance merely require Ms. Johnson to contribute some of those federal benefits *after* she has received them, towards the cost of her housing. Nothing in the federal statute indicates a congressional intent either to preempt state programs which assist the homeless or to prevent the State or the County from requiring homeless individuals voluntarily residing at the Shelter to contribute a portion of their personal funds from wherever derived, including SSI benefits, towards the cost of their housing.

*B. Supplemental State Benefits*

■ Ms. Johnson also argues that the defendant's policy should be preempted because it illegally deprives her of the $86 state supplemental payment, entitlement to which, she claims, "is in the exclusive prerogative of the federal government." This argument fails for the same reasons that her previous preemption argument failed.

Under the SSI plan states are permitted to provide "Optional State Supplement" ("OSS") payments to SSI recipients. 42 U.S.C. § 1382e. Although OSS assistance comes from state funds, § 1382e provides that, at a state's request, the federal government through Health and Human Services

("HHS") will administer the OSS assistance and determine eligibility for payments. *Frerks v. Shalala,* 848 F.Supp. 340, 344 (E.D.N.Y.1994), *aff'd,* 52 F.3d 412 (2d Cir. 1995). New York has opted into this program. N.Y.S.S.L. §§ 207 *et seq.*

In Ms. Johnson's case her $494 in federal benefits is supplemented by $86 in state funded benefits. She alleges that the defendants' policy of requiring contributions has illegally deprived her of that $86 of state money in violation of the federal policy set forth in § 1382e.

■ As an initial matter Ms. Johnson cannot state a claim for relief under § 1382e because the statute does not confer a private right of action. Rather than guaranteeing a certain level of benefits to an individual recipient, section 1382e shifts the burden of administering the State OSS payments to the federal government. *Casey v. New York State Dep't of Social Servs.,* 56 A.D.2d 72, 391 N.Y.S.2d 173 (2d Dep't 1977). Even if Ms. Johnson could state a claim under § 1382e it would fail because the state regulations for temporary housing assistance affect neither her eligibility for SSI nor for the state OSS payment authorized by N.Y.S.S.L. § 207 *et seq.* and § 1382e. Ms. Johnson continues to receive the full $86 of state benefits recommended by the federal government. The fact that she is then required to spend some or all of that money in order to support herself does not render the state's program for temporary assistance in conflict with the federal SSI program. Nowhere in the federal statute is it expressed or implied that a recipient of state funds shall not be required to spend her OSS payment on housing.

*V. Constitutional Violations*

■ In her fourth federal claim Ms. Johnson alleges that the defendant's policy violates her right to equal protection under the Fourteenth Amendment because it leaves

---

**3.** The main provisions which Ms. Johnson cites are: 42 U.S.C. §§ 1382(e)(1)(D) (public emergency shelter residents not eligible for more than six out of nine months); 1383 (amendment to reduce barriers facing eligible homeless individuals); 1382(a) (benefits of eligible individual living

in another person's household reduced by one-third); 1382(e)(1)(A) (inmates of public institutions excluded from eligibility); 1382(e)(1)(B) (certain inmates of public institutions eligible for vastly reduced monthly grant). None of these provisions apply to Ms. Johnson.

her with the same amount of money as a non-disabled recipient. Ms. Johnson contends that disabled recipients are entitled to a higher standard of need than able-bodied persons by operation of state law. Specifically, she claims that N.Y.S.S.L. § 131–a establishes the general standard for need for the non-disabled and § 209 establishes the standard for the aged, blind and disabled. Ms. Johnson also claims that the defendants' policy disadvantages disabled homeless shelter residents as compared to other disabled residents of publicly funded institutions who are not required to contribute a portion of their monthly SSI benefits as a condition of occupancy. Essentially she presents the opposite of the typical equal protection claim, i.e. that the policy of the State and the County, which applies equally to all, violates the equal protection clause because it does not create classifications.

The defendants' eligibility requirements for temporary housing assistance are neutral in that all recipients of temporary housing assistance, disabled and non-disabled alike, are required to contribute a portion of their income towards the cost of their temporary shelter. 18 N.Y.C.R.R. § 352.35(e), (f). A policy which applies evenhandedly to all people "unquestionably compl[ies] with equal protection." *Vacco v. Quill*, 521 U.S. 793, ——, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997) (citing *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979)).

Ms. Johnson's further allegation that other residents of the Shelter are not charged for the cost of their maintenance at the Shelter is unsupported by any specific allegations and is therefore denied. Her due process claim was not pressed in her Memorandum of Law in Support of Motion for Summary Judgment, nor at oral argument, and appears to have been dropped. If it was not dropped, it is hereby denied as Ms. Johnson was notified of VOA's intention to evict her if she did not pay her monthly contributions and she was granted and received a hearing on her state administrative appeal.

*VI. Section 1983*

Ms. Johnson's seventh federal claim appears to assert an independent claim under § 1983. This claim is dismissed because § 1983 "is not itself a source of substantive rights but merely provides a method of vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

*VII. State Claims*

Ms. Johnson also asserts three claims under state law: (1) that the State erroneously applied the statutory standard of need for a non-disabled Home Relief recipient, N.Y.S.S.L. § 131–a and 18 N.Y.C.R.R. § 352.8, rather than the higher standard of need applicable to disabled recipients of SSI benefits, N.Y.S.S.L. § 209; (2) that the monthly charge imposed by the County and VOA is not authorized by state statute and that by imposing such a charge the County has assumed legislative power in violation of Article three, section one of the New York Constitution; and (3) that she is a third beneficiary of the contract between VOA and the County and that the County and VOA have breached their contract by compelling her to pay over a portion of her SSI benefits. The Court expresses no opinion as to the merit of these claims and declines to exercise supplemental jurisdiction over them.

*VIII. Conclusion*

For the reasons set forth above, the plaintiff's motion for summary judgment is denied and the summary judgment motions of the State, the County and VOA are granted. The motion of VOA for leave to file and serve a cross-claim is denied without prejudice. The Clerk shall file a final judgment which shall dismiss plaintiff's federal question claims with prejudice and the supplemental claims alleged under New York law, without prejudice. No costs.

SO ORDERED.