**Beulah JOHNSON, Plaintiff–Appellant,**

v.

**Brian J. WING, as Commissioner of the Department of Social Services of the State of New York; Mary E. Glass, as Commissioner of the Department of Social Services of Westchester County; and Volunteers of America, Inc., Defendants–Appellees,**

**Sonia Mgrdichian and Linda Adrover, Intervenors–Plaintiffs.**

No. 98–9077.

United States Court of Appeals, Second Circuit.

Argued April 23, 1999.

Decided June 1, 1999.

Dominique Ghossein, Westchester/Putnam Legal Services (Michael D. Hampden, of counsel), for plaintiff-appellant.

Mary Lynn Nichols, Assistant Attorney General of the State of New York, for Eliot Spitzer, Attorney General of the State of New York (John W. McConnell, Deputy Solicitor General; Katherine Demgen, Assistant Attorney General; Robert A. Forte, Assistant Attorney General, of

counsel) for defendant-appellee Brian J. Wing.

Marguerite R. Wiess, Assistant County Attorney, Westchester County, for Alan D. Scheinkman, Westchester County Attorney (Stacey Dolgin–Kmetz, Chief Deputy County Attorney, of counsel) for defendant-appellee Mary E. Glass.

Andrew Schulz, Kalkines, Arky, Zall & Bernstein LLP, New York, NY, for defendant-appellee Volunteers of America, Inc.

Before: KEARSE and CALABRESI, Circuit Judges, and HAIGHT, District Judge.[*]

CALABRESI, Circuit Judge:

Pursuant to a contract between Westchester County, New York, and defendant-appellee Volunteers of America ("VOA"), VOA provides housing and other services to homeless persons in Westchester County. The County pays most of the attendant expenses. As part of this arrangement with the County, VOA housed plaintiff-appellant Beulah Johnson, who is disabled and receives monthly payments of Supplemental Security Income ("SSI").

The County and VOA, interpreting relevant laws and regulations of the State of New York, required Johnson to contribute most of her SSI benefits toward the cost of her upkeep (the "contribution requirement"), and Johnson brought suit to challenge that mandate. She argued, *inter alia*, that the contribution requirement is invalid (1) because it is preempted by the federal laws governing SSI, and (2) because it violates the "anti-attachment" provisions of the Social Security Act, 42 U.S.C. §§ 407(a) and 1383(d)(1). She also contended (3) that New York denies disabled persons the equal protection of the laws, because it imposes the same financial burdens on a needier class of persons—the disabled—that it imposes on less needy people.

[*] The Honorable Charles S. Haight, Jr., Senior United States District Judge for the Southern

The United States District Court for the Southern District of New York (Brieant, J.) granted summary judgment in favor of the defendants. *See Johnson v. Wing*, 12 F.Supp.2d 311, 319 (S.D.N.Y.1998). We affirm.

## BACKGROUND

The plaintiff, Beulah Johnson, is 41 years old and disabled, both physically and mentally. Her sole income is SSI, which she receives under 42 U.S.C. § 1382–1382f, as well as $42 of food stamps per month. Her current benefits are $494 per month in federal payment and $86 per month in Optional State Supplementation ("OSS"), which is funded by the State of New York but is administered by the federal Social Security Administration as part of SSI.

Johnson became homeless in 1996. In May of that year, she moved into the Yorktown Country Residence ("Residence"). The Residence is a shelter operated by VOA, which contracts with Westchester County to provide food, shelter, medical care, and other services to homeless adults at that location.

The total cost of housing Johnson at the Residence was about $3000 per month. SSI benefits are taken into account when determining eligibility for certain public benefits, including temporary housing assistance. *See* N.Y. Comp.Codes R. & Regs. tit. 18, § 352.29(g) (1998). Recipients of such assistance are required to "apply for and use any benefits and resources that will reduce or eliminate the need for temporary housing assistance," *id.* at § 352.35(f), and they are to be afforded a $45 monthly cash allowance for personal needs. *See id.* at § 352.8(f). Invoking these state regulations as authority, the County instituted the contribution requirement pursuant to which Johnson, as the price of living at the Residence, was initially charged the full amount of her

District of New York, sitting by designation.

monthly SSI benefits (including OSS), less $45. When she entered the residence, that amount was $511. The County contributed the balance, which was about $2500 per month. Johnson's benefits were subsequently increased pursuant to an SSI cost-of-living adjustment ("COLA"), and she was permitted to keep the additional benefits.

Johnson paid as directed each month through May 1997. In June 1997, she stopped, claiming that the Residence and the County had no right to demand money that came from her SSI benefits. Johnson was then advised (as she had originally been when she first entered the Residence) that failure to make her contribution would lead to the termination of her occupancy. Shortly thereafter, Johnson brought a state administrative action, and on July 23, 1997, the New York Department of Social Services ruled that Johnson was obligated to make payments.

In September 1997, Johnson filed the present suit in the Southern District of New York, seeking declaratory and injunctive relief, as well as recovery of funds previously paid to the Residence. She proceeded (as she does on appeal) *in forma pauperis*. Before the district court, Johnson argued *inter alia* that the contribution requirement is invalid (1) because it is preempted by federal SSI law, (2) because it violates the statutory prohibition on attaching SSI benefits, and (3) because it violates equal protection. She also raised claims based on due process, § 1983, and various state laws. The defendants agreed to suspend collection of payments—Johnson's and also those of people similarly situated—during the pendency of the suit. In due course, both sides moved for summary judgment.

On July 9, 1998, the district court (Brieant, *J.*) granted judgment for the defendants, ruling against Johnson on all the federal questions and dismissing the state law claims for lack of a federal claim to which they could be appended. *See Johnson,* 12 F.Supp.2d at 319. With regard to the question of preemption, Judge Brieant concluded that there was no explicit conflict between the state and federal laws, regulations, and policies and that there was no indication that Congress intended to occupy the relevant field, which he defined as "assist[ing] the homeless." *Id.* at 318. He also ruled that the anti-attachment statute was not violated as long as the payments were voluntary, which he found these payments to be, *see id.* at 316–17; nor was the statute implicated where, as here, there was neither "legal process" nor qualifying "threats." *Id.* at 316. On the issue of equal protection, Judge Brieant held the contribution requirement constitutional for the simple reason that it demanded the same payments of everyone. *See id.* at 319.

Johnson appeals only these three issues.

## DISCUSSION

### I. Standard of Review

■ We review the district court's grant of summary judgment *de novo,* drawing all inferences from the record in favor of the nonmoving party. *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir. 1998), cert. denied —— U.S. ——, 119 S.Ct. 1456, 143 L.Ed.2d 543 (1999).

### II. Merits

#### A) Preemption

■ We concur in the district court's disposition of the preemption issue, and our reasoning is substantially the same as that found in Judge Brieant's opinion. *See Johnson,* 12 F.Supp.2d at 317–18.

We note one question that remains open. Johnson has argued that COLAs reflect a federal judgment that the amount of SSI benefits should be increased in response to inflation. It follows, she contends, that if the County raised her required contribution when a COLA went into effect and left her with the same $45 as before, the contribution requirement would frustrate the purposes of the federal COLA and would

therefore be invalid. In the instant case, however, the County did not so increase Johnson's required contribution. Accordingly, this question is not before us, and we express no view as to how it should be decided.

## B) Attachment

■ Johnson argues that the contribution requirement violates the "anti-attachment" or "anti-alienation" provisions of the Social Security Act, 42 U.S.C. §§ 407(a) and 1383(d)(1). On cross-motions for summary judgment following discovery that included Johnson's deposition, the district court specifically found "that Ms. Johnson voluntarily agreed to her placement in emergency housing under the terms and conditions as they were explained to her," *Johnson*, 12 F.Supp.2d at 315, and that "there is no evidence that plaintiff's payment was not voluntary." *Id.* at 316. Those findings, which we have no reason to disturb, led the district court to a justified reliance on *Fetterusso v. New York*, 898 F.2d 322, 328 (2d Cir.1990), where we said of the appellants, who were individuals committed to mental institutions, that "[t]here is no basis for concluding that any of the appellants did not voluntarily agree to the use of their social security benefits to pay the costs of their care and treatment." And if the payment of benefits is voluntary, it does not violate the anti-attachment statute. *See id.* In the circumstances of this case, we again agree with the district court, substantially for the reasons stated in its opinion.

## C) Equal protection

■ Johnson's final claim is based on the contention that the contribution requirement denies disabled persons the equal protection of the laws. She concedes that the applicable standard for this claim is rational basis review.

Johnson does not argue that the disabled are treated differently and worse under the state law and regulations and the County policy than the non-disabled. Instead, she argues that the disabled are more needy than others, that New York has legislatively recognized this fact, and hence that equality requires that they be treated better than the non-disabled. It is discriminatory, Johnson contends, to reduce disabled SSI recipients to the same $45 per month that non-disabled SSI recipients are left with after the costs of housing are paid.

■ Unlike the district court, we do not say that a plaintiff could never base an equal protection claim on the contention that equality, in certain circumstances, requires that differently situated people be treated differently. And as Johnson notes, New York has statutorily acknowledged that the disabled may be more needy than the non-disabled. It might be possible to construe that acknowledgment as a recognition that a uniform contribution requirement would have a disparately adverse effect on the disabled. But a policy does not deny equal protection merely because it is known to affect a particular class adversely. As a general matter, a facially neutral law, policy, or regulation violates the Equal Protection Clause only where its adverse effect on a suspect class reflects purposeful discrimination. *See, e.g., Personnel Administrator v. Feeney*, 442 U.S. 256, 272–74, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Washington v. Davis*, 426 U.S. 229, 239–42, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Orange Lake Assocs., Inc. v. Kirkpatrick*, 21 F.3d 1214, 1226 (2d Cir.1994). The legislative recognition of adverse impact does not suffice to imply such a purpose; the requirement of purposeful discrimination means that equal protection is not violated unless the contribution requirement was enacted not "in spite of" its adverse effect on the disabled but rather *because* it would have that effect. *See Feeney*, 442 U.S. at 279, 99 S.Ct. 2282. Nothing in Johnson's arguments suggests any other basis for a finding of discriminatory purpose, nor is one apparent to us. Accordingly, we agree with the district

court's conclusion that there is no equal protection violation here.

The judgment of the district court is affirmed.