OPINION OF THE COURT
Raymond E. Cornelius, J.
In 1997, the defendant was admitted to a nursing home fa *618 cility operated by the plaintiff herein. He signed an admission agreement, dated October 15, 1997, which provided that he would receive room and board, 24-hour skilled nursing care, as well as other specified services. Part of this agreement related to financial arrangements. In this regard, the defendant agreed to pay the nursing home the daily rate of $178 on a monthly basis, or if he were a Medicaid recipient, an amount per month to be determined by the Department of Social Services. The document also recited that the defendant, and his designated representative, “agree to appropriately disburse your personal financial resources.” In the event that the defendant, or his designated representative, became responsible for any charges under the terms of the agreement, he was required to pay all costs and expenses, including reasonable attorney’s fees, incurred in the collection of any amounts owed to the nursing home. The nursing home reserved the right to charge 1.5% finance charges per month, or a maximum of 18% per year, on any balance owed for more than 30 days from the billing date.
In addition to the admission agreement, the defendant signed a consent, whereby he authorized assignment of Medicaid payments to the nursing home. As part of the Medicaid eligibility determination, the County Department of Social Services generated a document entitled “Notice of Intent to Establish a Liability Toward Chronic Care,” which initially established the defendant’s total income contribution, for his own care, at $710 per month. This amount was subsequently increased to $736 per month for the year 1999, and $756 per month for the year 2000. In addition to these amounts, the defendant was permitted to retain $50 per month for personal needs allowance.
Although Social Security payments were received by the defendant, he failed to make any contributions to the nursing home for his own care. As a result, the plaintiff commenced this action by filing the summons and complaint on February 16, 2000. The complaint alleges that the defendant agreed to abide by all the terms outlined in the admission agreement, and that as a part of the Medicaid eligibility determination, he was instructed to turn over the amount of $710 per month to plaintiff to pay for a portion of his care, which amount was thereafter increased to $756 per month as of January 1, 2000. This latter claim is based upon the aforementioned notice, issued by the County Department of Social Services, as well as a subsequent “Notice of Intent to Change the Contribution Toward Chronic Care Costs.” The complaint sets forth three *619 causes of action based upon the claim that defendant breached his agreement with the nursing home.
The first cause of action requests specific performance of the admission agreement, as well as the Medicaid directive, by requiring the “Defendant to pay Plaintiff henceforth a monthly payment for his cost of care of $756 out of his [Social Security Act] SSA income.” This cause of action contains representations that the defendant requires continuing medical care and cannot be discharged except to another health care facility, which would allegedly not accept him as a patient because of his refusal to pay over his SSA income. Further, the complaint acknowledges that “Plaintiff cannot seek or enforce a money judgment against Defendant’s SSA income,” and that the Social Security Administration has refused to appoint plaintiff as a designated payee for the SSA income. Thus, plaintiff alleges that there is no adequate remedy at law and requests equitable relief in the form of specific performance. The second cause of action requests judgment in the amount of $23,883.46, together with interest at the rate of 18% per annum, for past due amounts. The third cause of action requests an unspecified money judgment for costs, disbursements and reasonable attorney’s fees.
The defendant failed to submit an answer to the complaint, and the plaintiff has now made a motion, pursuant to CPLR 3215, for a default judgment. Notwithstanding the defendant’s status as a patient of a skilled nursing facility, he appears to be fully cognizant of the proceedings brought against him and to be fully competent. He transports himself, to and from court, by means of a motorized wheelchair. An attorney, on behalf of the Volunteer Legal Services Project, represents the defendant and has now filed an affidavit in opposition to the motion. Counsel contends that the first cause of action, requesting specific performance of the agreement by requiring payment of SSA benefits, fails to state a cause of action because such funds are, in effect, exempt under 42 USC § 407 (a).
In relevant part, the Social Security Act, as enacted and amended by Congress, provides as follows: “The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.” (42 USC § 407 [a].) In several decisions, the Supreme Court of the United States has held *620 that this statute precludes efforts of a State or local government to attach Social Security benefits and thereby obtain reimbursement for care and treatment provided to recipients. (See, Bennett v Arkansas, 485 US 395 [1988]; Philpott v Essex County Welfare Bd., 409 US 413 [1973].) Similarly, in perhaps the only New York State decision on the subject, it has been held that this Federal statute would bar any action to recover Social Security disability benefits from a representative payee in connection with services rendered to her son, while a resident at a State-operated developmental center. (State of New York v Jacobs, 167 AD2d 876 [4th Dept 1990].) In most instances, these types of actions are based upon some State legislative act and/or regulation, which, to the extent that it conflicts with 42 USC § 407 (a), would be unconstitutional as violative of the Supremacy Clause of the US Constitution. This was the situation, for example, in Bennett v Arkansas (supra), which involved the “State Prison Care and Custody Reimbursement Act,” permitting seizure of a prisoner’s property or estate, including Social Security benefits. Indeed, in State of New York v Jacobs (supra), the Court ruled that to the extent that Mental Hygiene Law § 43.03 (a) might be interpreted to permit recovery of the cost of institutionalized care from Social Security benefits, it would be unconstitutional under the Supremacy Clause.
The pending case is somewhat unique because it involves private contractual rights, and an application to reach future Social Security payment in the form of the equitable relief for specific performance. Thus, there is no State statute or regulation, that would be subject to constitutional challenge under the Supremacy Clause. Nevertheless, the express language of 42 USC § 407 (a) prevents any transfer or assignment of future payments, whether by actions at law or in equity, and without regard to the nature of the creditor. The statute further specifies the means to accomplish such improper alienation as “execution, levy, attachment, garnishment, or other legal process.” There is no identifiable asset, constituting Social Security benefits previously paid to the defendant, and accordingly, there is no application to attach, for example, an existing fund. Instead, the plaintiff seeks a court order directing that the defendant turn over future Social Security payments, and the question becomes whether or not this comes within the definition of “other legal process.”
The term “other legal process” has been the subject of a rather expansive definition by, at least, the United States Court *621 of Appeals, Second Circuit. In Fetterusso v New York (898 F2d 322, 328 [2d Cir 1990]), the court stated that by the use of this language, Congress intended “to embrace not only the use of formal legal machinery but also resort to express or implied threats and sanctions.” Subsequently, the same court held that a special proceeding, commenced in New York State Supreme Court, to secure payment on behalf of the Office of Mental Health for services, from a patient’s Social Security benefits, paid to his conservator, came within the purview of “other legal process.” (Kriegbaum v Katz, 909 F2d 70 [2d Cir 1990].) Conversely, the court further ruled that invoices repeatedly sent to a patient’s conservator would not constitute the kind of coercive action to come within the antialienation provision of the statute. More recently, the same court has held that “other legal process” would encompass a New York State policy whereby a person’s Social Security benefits are allocated to their spouse for the purpose of determining Medicaid eligibility. (Robbins v DeBuono, 218 F3d 197 [2d Cir 2000].)
In the pending case, this court has concluded that any order granting plaintiffs application would constitute a violation of 42 USC § 407 (a). The plaintiff, by commencing this action, has invoked the jurisdiction of the State courts, and the current motion requests judicial relief in the form of a default judgment. If the application were granted, an order would be issued directing the defendant to turn over future Social Security benefits, and certainly become a “legal process” of the court.
Plaintiff contends that 42 USC § 407 (a) is inapplicable because of the claimed agreement with the defendant, and in support thereof relies upon Fetterusso v New York (supra). In that case, the court affirmed summary judgment dismissing claims brought by persons committed to the Office of Mental Health, after having been found not guilty of underlying criminal charges by reason of mental illness. As the result of an amendment to Mental Hygiene Law § 43.03, the State had adopted a policy of billing patients, either directly or through a representative payee appointed by the Social Security Administration, for their care and treatment. The case was ultimately decided, however, on the procedural basis that the plaintiffs had not controverted, on the motion for summary judgment, by affidavit or other evidence, the contention that they had voluntarily agreed to the use of their Social Security benefits to pay for such costs. It should be emphasized that the same substantive issue was subsequently addressed in Kriegbaum v Katz *622 (supra), and, as already discussed, a special proceeding to secure payment for such services through Social Security benefits was held to be in conflict with the antialienation provisions of 42 USC § 407 (a).
The plaintiff also relies upon Johnson v Wing (12 F Supp 2d 311 [SD NY 1998], affd 178 F3d 611 [2d Cir 1999], cert denied 528 US 1162 [2000]). However, the determination in this case was, in effect, based upon a finding that the recipient of Social Security benefits had voluntarily agreed to pay over a portion of such income in return for temporary housing assistance. Further, the District Court ruled that cancellation of her living accommodations would not constitute the kind of coercive practices to constitute “other legal process” under the statute.
Based upon the documentation submitted in connection with the motion for a default judgment, it is not altogether clear that there was an agreement by the defendant to include Social Security benefits as part of his personal financial resources, which were to be contributed for his care. He consented to an assignment of Medicaid to the nursing home, but as aforementioned, the notices concerning Medicaid eligibility,.which allocated a portion of the Social Security benefits as the defendant’s contribution to his nursing home care, were produced by the County Department of Social Services. There is no provision, contained in any of the documents, whereby the defendant expressly agreed to apply these Social Security benefits, which could then be made subject of an order for specific performance. (See generally, 96 NY Jur 2d, Specific Performance, §§ 18-20.)
Assuming that such an agreement could be implied from the documentation, as well as the conduct of the parties, there is no indication that the defendant has voluntarily agreed to the future application of such benefits to the cost of his care. In fact, by the submission of the answering papers, the defendant has taken the position that he opposes a court order directing that he pay over a portion of his future Social Security benefits to the plaintiff. In Crawford v Gould (56 F3d 1162 [9th Cir 1995]), psychiatric patients in California State hospitals brought a class action challenging the State’s practice of deducting their money, including Social Security benefits, from personal deposit accounts in order to reimburse the hospital for the cost of patient care and maintenance. The consent to make such deductions was contained within a document entitled “Authorization for Deposit and Withdrawal,” which *623 was made available to all patients. The court distinguished Fetterusso v New York (supra), in which the claimants failed to contest the voluntariness of their agreements. The court emphasized, as part of the ruling that the practice in California violated 42 USC § 407 (a), that the plaintiffs had either declined to sign the authorizations for deposit or had revoked their authorizations. In the pending case, there is no basis for this court to conclude that, at this point in time, the defendant has voluntarily agreed to application of future Social Security benefits for his care and treatment, which would then justify issuance of an order for specific performance. Accordingly, the court declines to grant a default judgment for the relief demanded in the first cause of action.
The provisions of 42 USC § 407 (a) do not relieve the defendant of his obligation to make payment for the uncovered costs of his care and treatment rendered by the plaintiff, but only protect Social Security benefits from the claims of creditors. (Fetterusso v New York, supra.) Although the plaintiff would, therefore, normally be entitled to a judgment for the amount of past services, the court agrees with counsel for the defendant that there is some discrepancy concerning the exact amount owed to the plaintiff, based upon the documentation submitted to date. Although the defendant has not interposed an answer, and is in default, the court is unable to determine the exact amount owed to plaintiff. Accordingly, plaintiff should be permitted to submit additional evidence, to the court, concerning the exact amount owed for past services, together with interest, before entry of a default judgment. Further, an award of counsel fees, as requested in the third cause of action, may only be based upon quantum meruit. Counsel, therefore, is permitted to submit evidence, on that basis, for services rendered in connection with the judgment to be entered under the second cause of action.